## LOUISA H. TURNER

*v.*

## LOUIS KUEHNLE.

[Submitted October 25th, 1905. Decided November 9th, 1905.]

1. Where a husband, in order to defeat his wife's dower interest, caused a mortgage to be foreclosed against his lands, making his wife a party defendant, and by collusion with a party who held his contract to convey the premises for $18,000 managed to have the lands sold to him for the amount of the mortgage, amounting to $4,300, and then settled with the party and received from him the difference between $4,300 and $18,000, the wife's inchoate right of dower was not barred by the sale.

2. A decree of foreclosure and for a sale of mortgaged premises consists of two parts—*first,* the ascertainment of the amount due on the mortgage and the declaration that the complainant is entitled to have the premises sold to pay the same; and *second,* the decree of foreclosure against all of the defendants, *when the premises are sold.* The actual foreclosure depends entirely upon the sale, and to effect a foreclosure in equity the sale must not be a fraudulent sale, so conducted as to injure the party affected by it.

3. One who had perpetrated a fraud upon another cannot set up as a defence to an action based thereon that the defrauded party should have discovered the fraud and protected himself against it at the time.

4. Where a husband conveyed his land in his lifetime, the widow's dower will be measured as at the date of the alienation, and she can acquire no benefit from improvements subsequently placed upon the property or its general advance in price.

On demurrer to bill.

*Mr. John C. Reed* and *Mr. Thomas E. French,* for the demurrant.

*Mr. Ulysses G. Styron,* for the complainant.

PITNEY, V. C.

This is a suit for dower.

The complainant, as the widow of Richard H. Turner, deceased, demands dower in some valuable real estate in Atlantic

City, of which her husband was seized in his lifetime, and which came by conveyance, in which she did not join, to the defendant, who is in possession of the same.

The defendant claims that her dower is barred by the proceedings of foreclosure and sale under a mortgage which was paramount to her husband's title, and to which proceedings she was made a party.

She sets out in her bill and challenges the binding effect upon her of the decree in foreclosure, although she was a party to it, on the ground that the amount of the mortgage was less than one-fourth of the value of the premises and of the actual price which was paid by the defendant to her husband, and that the foreclosure was voluntary upon the part of her husband and the defendant, and that they colluded in procuring the mortgage to be foreclosed and the premises to be sold thereunder for the bare amount of principal due on the mortgage, with interest and costs, and all for the express purpose of cutting off her inchoate right of dower.

The question thus raised is an important and interesting one, and its solution requires a setting forth of the facts more at length. They are very well abstracted in the defendant's written argument, which I shall follow in the main.

The complainant was married to her husband in 1871 and lived with him at Atlantic City until 1894, when he deserted her, and remained away until 1904, when he came to her house in Atlantic City, and died. In August, 1893, he purchased the lands in question and obtained title thereto by a conveyance from one Hoffman, who, on the same day, mortgaged the premises to one Allen to secure $4,000, who afterwards assigned the mortgage to one Fitton. This is the mortgage which was subsequently foreclosed.

In 1895 her husband leased the premises for ten years, from March 25th, 1895, to one Wheeler, for a yearly rent of $1,200. The lease contained a covenant upon the part of the husband to convey the premises at any time within one year for the sum of $18,000, free and clear of all encumbrances.

Wheeler assigned the lease and covenant to a brewing company, and Wheeler and the brewing company, or one of them,

made extensive improvements upon the premises, and incurred indebtedness therein which was not paid, and lien judgments were recovered and the premises brought to sale in January, 1896, and purchased by the defendant, to whom the lease and contract of sale were subsequently assigned, so that the defendant became entitled to demand the conveyance of the premises from the husband at the sum and price of $18,000. The defendant filed a bill against complainant's husband, in this court, for the specific performance of that contract, on the 11th of March, 1896, and also filed a *lis pendens* under that bill.

Prior to the filing of that bill, the defendant and the complainant's husband caused a deed of conveyance for the premises to be prepared from the husband and the complainant to the defendant for the consideration of $18,000, and asked the complainant to execute it, but she declined.

No further proceedings were had in the suit for specific performance, but in October, 1896, Fitton, the holder of the paramount mortgage, filed a bill to foreclose the same, making the complainant and her husband parties. No defence was put in by either herself or her husband. Final decree was obtained and execution issued to the sheriff of Atlantic county, and the property brought to sale on the 6th of February, 1897, and sold to the solicitor of Fitton for the amount due on the mortgage, with costs and interest.

The solicitor assigned his bid to the defendant, and the sheriff made his deed to the defendant, and under that deed the defendant claims that he holds title, free and clear of the complainant's dower.

The description of the lands shows that they consist of two lots, which are apparently separate from each other.

The facts relied upon to nullify the effects of this conveyance against the complainant are as follows, which the complainant has learned since the death of her husband, in 1904:

The premises sold for $4,300, the amount due on the mortgage, and were worth a great deal more than the $18,000 mentioned in the contract of the husband, and were worth at least $30,000 by reason of the improvements put thereon by Wheeler and the brewing company; and one Irving, shortly before the

sheriff's sale, actually offered complainant's husband $20,000 for the same, and the defendant actually paid or secured, coincident with the delivery of the sheriff's deed to him, to the complainant's husband, the sum of $18,000, including the amount paid for the sheriff's deed.

Upon the refusal of complainant to join with her husband in a conveyance to the defendant, her husband and the defendant, in order to procure a transfer of the title of the land to the defendant, discharged of the encumbrance of the inchoate right of dower of the complainant, entered into an agreement to procure the mortgage in question to be foreclosed and the premises purchased from the sheriff by the defendant, at a price sufficient only to pay the amount due on the mortgage and the costs, which costs the husband agreed to pay out of the purchase-money, and it was part of the agreement to provide against any surplus arising from the sale by discouraging and preventing competitive bidding at the sale; and it was understood between the husband and the defendant that at the delivery of the sheriff's deed to the defendant he should pay to the husband the whole $18,000 purchase-money provided for in the covenant, and that the husband and the defendant induced the holder of the mortgage to allow the same to be foreclosed and the proceedings carried through to sale in accordance with the agreement.

The mortgage was not foreclosed with the honest purpose of collecting the money due thereon, but with the fraudulent intent, to use the language of the bill,

"of securing an unfair and unjust advantage of your oratrix by obtaining from such proceedings the decree of this court barring the rights and interest of your oratrix in the said lands * * * by means of a sale of the lands and a deed of conveyance to the defendant."

At that time the complainant's husband was the owner of real estate in Atlantic City worth at least $30,000, and possessed of money and securities to a large amount.

The sale was conducted at a hotel of which the defendant was the proprietor.

The defendant is a man of reputed wealth, of extensive influence in the community and of wide popularity. Both he and the complainant's husband were present at the sale and caused it to be made known to those in attendance thereat, for the purpose of discouraging competition in the bidding, "that the premises were to be sold only for the purpose of making title thereto, and that the said Turner and the said Kuehnle were the only ones interested in said sale and said premises and in the objects of said sale." Those in attendance at the sale were largely the friends of defendant and the complainant's husband, and for that reason declined to bid, and only one bid was in fact made, and that was by the solicitor of the mortgagee, who was the personal counsel of the defendant and the husband, and known as such by the persons attending the sale. After the sale the solicitor, without any consideration, assigned the bid to the defendant, and the sheriff executed and delivered a deed to the defendant. The amount actually paid at its delivery by the defendant to the husband, by cash and mortgage, was $18,650. The additional $650 represented interest on the purchase price of $18,000.

Complainant learned of these facts after the death of her husband, and immediately employed counsel to bring suit and instructed him to take proceedings to establish her rights in the lands.

Counsel so employed failed to proceed at once, and after waiting on him a reasonable time—the exact time is not stated—she employed her present solicitor, who filed this bill on the 17th of May, 1905, about fourteen months after the death of her husband.

The demurrer charges, generally, a want of equity, and that her remedy is at law, if at all; that any defence which she has to the decree should have been set up in the foreclosure suit, and that the bill is multifarious and lacking in parties.

The complainant's bill does in fact attack the priority over the conveyance to her husband of the Fitton mortgage, but I think that that part of the bill does not set up a cause of action.

She also alleges that her husband was entirely able, financially,

to pay off and discharge the mortgage in fulfillment of his covenant to convey, and that the mortgage was in fact and in effect paid by her husband out of the purchase-money, and such payment was known to the defendant, so that she is in equity dowable of the whole premises, without any deduction for the mortgage.

Without expressing any final opinion on that question, I shall assume, for the purposes of the demurrer, that the defendant is at least entitled to occupy the position of assignee of the mortgage, and to set it up in equity against the complainant's demand by way of reducing the amount of her dower, if any she has.

The important question in the cause is whether, from the facts above displayed, the defendant can set up the benefit of the decree of foreclosure against the complainant.

The language of the decree, as set out in the bill, is that the defendant (singular) be forever barred, &c. I shall treat it as if it was in the plural (defendants), and that it includes the complainant.

It seems to be entirely settled that the machinery of a court of justice is capable of being made use of to promote injustice and to perpetrate a fraud.

In other words, there is nothing so peculiarly sacred about a judgment or decree of a court of justice as, on the one hand, to prevent their being used for fraudulent purposes, and, on the other hand, to prevent this court from limiting their force and effect accordingly. *Metropolitan Bank* v. *Durant, 22 N. J. Eq.* (7 *C. E. Gr.*) 35 (at p. 42); affirmed, 24 *N. J. Eq.* (9 *C. E. Gr.*) 556; *Mechanics National Bank* v. *Burnet Manufacturing Co., 33 N. J. Eq.* (6 *Stew.*) 486; affirmed on appeal, 35 *N. J. Eq.* (8 *Stew.*) 344.

The bill was there filed to set aside a sale of property under a judgment and execution, on the ground that the judgment, which was for an honest debt, was recovered, and the property brought to sale under it, for the purpose of having the property sacrificed and bought in for the benefit of the defendant, and for the purpose of defeating the other creditors of the defendant.

The last two head-notes are as follows: "Fraud perpetrated by means of a judgment is entitled to no more immunity than a fraud perpetrated by any other means. If a judgment, founded upon a just debt, is entered, not for the purpose of securing or collecting the debt, but for the purpose of being used as a cover to protect the defendant's property from his other creditors, the court will denounce it as a fraud, and set it aside, as it would any other fraudulent contrivance."

To the same effect is *Kirkpatrick* v. *Corning, 38 N. J. Eq. (11 Stew.) 234,* in the court of errors and appeals, and the same case subsequently before the same court, in *40 N. J. Eq. (13 Stew.) 241.* At *p. 257,* Mr. Justice Scudder says: "While, therefore, the decree of foreclosure is conclusive as to the parties who were interested at the time in the lands foreclosed, so that they cannot attack it for informalities or want of proper parties [these were some of the grounds on which it was attacked], yet the sale of the real and personal estate may be set aside and the decree opened, if fraud be shown, and the prices paid for the land and personal estate may be inquired into to ascertain how much is equitably due from one party to the other." Farther on he quotes with approval the language of *Kerr on Fraud and Mistake,* which I will again quote:

> "The strong language applied to cases of fraud is that deeds, obligations, contracts, awards, judgments or decrees may be instruments to which parties may resort to cover fraud and through which they may obtain the most unrighteous advantages, but none of such devices or instruments will be permitted by a court of equity to obstruct the requisitions of justice. If a case of fraud be established, a court of equity will set aside all transactions founded upon it by whatever machinery they may have been effected and notwithstanding any contrivance by which it may have been attempted to protect them. It is immaterial whether such machinery and contrivance consisted of a decree in equity and a purchase under it, or of a judgment at law, or of other transactions between the actors in the fraud." *Kerr Fr. 43, 44.*

The peculiar fraud perpetrated in the cases just cited was the use of the judgment, in the one case, and the decree of foreclosure, in the other, for the purpose of acquiring title to property for a sum less than it was worth, and thus cutting off, in the one case, the other creditors of the defendant in the

judgment, and, in the other case, the parties interested in the equity of redemption.

Such was the object of the sale under the foreclosure in the present case, and of the contrivance by which the property was sold at a price less than one-quarter of the real contract price between the parties, and one-sixth of the actual value of the property.

What the complainant asks is, indeed, not the setting aside the decree of sale, but that of foreclosure, which is that the defendants stand absolutely forever barred and foreclosed in the equity of redemption in so much of the mortgaged premises *as shall be sold by virtue of the decree.*

Now, a sale fraudulently contrived and conducted in such manner as to reduce the amount bid to less than one-quarter of the actual price paid for the premises, for the purpose of defeating the just and lawful right of the complainant in the actual surplus money, ought not, in equity, to be considered and treated as such a sale as will fulfill the condition of the decree barring redemption.

The decree itself consists of two parts—*first,* the ascertainment of the amount due and the declaration that the complainant is entitled to have the premises sold to pay the same; and *second,* the decree of foreclosure against all the defendants *when the premises are sold,* so that the actual foreclosure depends entirely upon the sale, and in order to give effect to the foreclosure in a court of equity it must not be a fraudulent sale, conducted in such a manner as to injure the parties affected by it.

But it is argued that complainant was guilty of a lack of proper attention to her own interests in not taking, at the time, positive action in asserting her rights, and that by her silence she measurably acquiesced in what was done and is estopped from now asserting them.

Let us consider this aspect of the case, and in so doing we must bear in mind that she was under all the ordinary disadvantages of a woman, inexperienced in legal matters, and presumably unadvised as to her rights and how to assert them.

She did, indeed, have notice that the property was proposed to be sold about a year previous to the sheriff's sale, by her husband to the defendant, for the sum of $18,000, but she is not chargeable with notice that the foreclosure, which took place several months later, was part of a scheme to carry through that sale without her signature to the deed. Moreover, I do not feel disposed to apply to her, with full force, the maxim that ignorance of the law does not excuse. I doubt very much whether it ought to be applied under the circumstances of this case.

Be that as it may, she had a right to presume that the property would bring at the sale its full value, and she was not called upon to suspect, much less presume, that the sale of property worth to her husband $18,000, and to the person holding the contract many thousands more, could be so managed as to be sold at a sum not more than one-sixth of its real value, and such sale receive the approval of this court.

She was not only not chargeable with notice, but the demurrer admits that she did not have actual knowledge of the fraudulent means by which that unlawful result was obtained.

She had the right to expect that the surplus over and above the amount of the mortgage would be paid into this court, and that before it was paid out she would receive notice thereof, according to the rules and practice of this court, and have the opportunity to assert her rights.

She is not chargeable with notice that a fraud was being practiced upon her. These considerations of themselves are, in my judgment, a sufficient answer to this objection.

But there is another consideration, and it is this: In my judgment, a party who has perpetrated a fraud upon another, through the forms of law or otherwise, cannot be permitted to set up, as a defence to his fraud, that the defrauded party ought to have discovered the fraud and protected himself or herself against it at the time. It does not alter the character or effect of the fraud that it was successful, and that the defrauded party might have protected himself or herself against it, and failed, either through oversight, positive neglect or otherwise, to do so, and in my judgment no estoppel arises out of such failure.

It is not necessary, at this time, to determine definitively what remedy the complainant would have had against the $14,000 surplus if the property had been bid up to the actual amount paid, nor the remedy which she will have in this cause at the final hearing.

But there seems to be little doubt as to what her remedy was at the time of the sale.

The question was dealt with and decided by Chancellor Zabriskie, in *Vreeland* v. *Jacobus, 19 N. J. Eq. (4 C. E. Gr.) 231,* and in *Denton* v. *Nanny, 8 Barb. 618,* where the subject is discussed and the authorities cited in an elaborate and able opinion.

It may be inferred that the decision in *Vreeland* v. *Jacobus* led to the adoption of the one hundred and fifty-ninth rule, found in the first edition of *Dick. Ch. Prec.* (at *p. 40*), and the elaborate scheme for ascertaining the value of the widow's inchoate right of dower, found on *pp. 64, 65* of the same book.

That rule (159) was abrogated in 1886 (see *41 N. J. Eq.) (14 Stew.),* for what reason I am not at present informed. But its abrogation cannot affect the right of the complainant, under the doctrine laid down by Chancellor Zabriskie, in *Vreeland* v. *Jacobus,* which I do not find has ever been doubted or overruled.

There is as little doubt as to the remedy of the complainant herein if the bar of the decree of foreclosure is removed as to her. As her husband did not die seized of the premises, her dower will be measured as of the date of his alienation, and she will derive no benefit from the subsequent improvements put upon the property, or its general advance in price.

So as to damages for the detention of her dower. They will commence from the date of her demand, and not from the date of the death of her husband.

Objection was taken that Mr. Fitton, the mortgagee, should have been made a party. I am unable to see the least interest that he has in this controversy. No relief is prayed against him and no decree that the court can make can affect him in the least, either directly or indirectly.

I will advise that the demurrer be overruled, with costs, and leave to the defendant to answer within twenty days after service upon him of a copy of the order and of payment of costs.