Defendant, in 1925, started a land development known as Wildwood Gables, proceeded to divide the land into sections, blocks and lots. Complainant entered into an agreement for the purchase of lot 4, block 163 in section 2 situate at the northeast corner of Ocean and Charlestown avenues. The purchase price was $6,000 of which $3,000 was paid in cash and the balance by a purchase-money mortgage. The cash payments were in installments of $120 per month, and on or about the time of the final installment payment a deed was delivered to complainant bearing date August 15th, 1927, and on the same date complainant executed and delivered to the defendant the mortgage aforesaid, payable two years from its date, to wit, August 15th, 1929.
The agreement of sale provided, inter alia: "Party of the first part agrees to have lot filled in, streets laid out and graded, cement curbs and sidewalks laid on or before September 1st, 1927, or as soon thereafter as said improvements can be conveniently completed, provided, however, that said improvements shall be fully completed before August 1st, 1930."
These improvements were not completed in their entirety on August 1st, 1930, but, on the contrary, on that date no curbs or sidewalks had been constructed, within the immediate vicinity of complainant's lot.
After the giving of the mortgage aforesaid complainant paid the interest thereon up to February 15th, 1930, and in May of that year defendant began demanding payment of the principal, which demands were not complied with by the complainant.
On August 11th, 1930, complainant gave notice to defendant of a rescission of his contract, tendered a deed for the lot in question and demanded a cancellation of his bond and mortgage. Defendant refused the tender, whereupon complainant instituted the present proceedings.
The gravamen of complainant's claim for relief is set forth in the nineteenth paragraph of the bill of complaint as follows: *Page 375 
"Complainant charges that defendant did not intend, at the time of entering into said contract, to build said streets or sidewalks or to grade and build curbing therein, but, by deception, sought to induce and did induce complainant to part with his money, without receiving the pretended consideration agreed to be given; and to better accomplish that result defendant provided for the payment of all the purchase price and execution and delivery and due date of the mortgage long before any default should occur touching and concerning the building and grading of the sidewalks, and the building of the curbing therein."
An inspection of the contract of sale shows that the fact was and is that complainant was called upon to pay all of the purchase price, including the payment of the purchase-money mortgage, on or before August 15th, 1929, and that the defendant had until August 1st, 1930, to complete its promised improvements, but the other allegations in the nineteenth paragraph above quoted must be established by either direct evidence of a fraudulent intent at the inception of the agreement or by necessary inference arising out of the evidence and circumstances attending the execution of the contract and subsequent developments thereunder.
The relief prayed for is that: (a) defendant be restrained from foreclosing its mortgage; (b) that the bond and mortgage be canceled; (c) that defendant be decreed to accept a reconveyance of the property; (d) that defendant account to complainant for moneys paid on account of the purchase as well as for interest paid on the mortgage and taxes on the lot.
There is no question but that equity has ample power to grant the relief sought, if complainant has supported by proof the case stated in the bill of complaint. Kunz v. Barnegat Pines RealtyCo., Inc., 109 N.J. Eq. 115.
A reading of the bill of complaint demonstrates that it was framed in reliance on the general principle laid down in12 R.C.L. 259 § 25:
"False representations by a vendor of land of his intention to make improvements which will benefit the property sold *Page 376 
are grounds for rescinding the contract of sale, and a good defense to a suit for its specific performance, as, for example, a false representation that he intends to build a railway station and cement walks. To have that effect, however, it is generally held that the vendor must have had no such intention at the time the statement was made, there being no right to rescind if the statement was made in good faith, even though such intention is not carried out."
The rule above laid down gets its support from Roberts v.James, 83 N.J. Law 492.
In Roberts v. James, supra, there were four representations alleged to be false and relied upon by the plaintiff: (a) hotel to be built; (b) railroad station; (c) cement walks to be constructed; (d) Roberts back of the development and that he had contracted for houses to be erected.
The court held that the representations that houses had been contracted for and that Roberts was back of the development were representations of existing facts; but that the representations as to the building of the station and the puting in of the walks were on a different footing, saying:
"It is, however, settled, that a representation of an intention, as existing, if false, avoid a contract induced thereby. Where directors of a company procured a loan by representing that its object was to buy a property and develop the business, when, in fact, the object was to pay off pressing liabilities, they were held in an action for deceit. `There must be,' said Lord Bowen, `a misstatement of an existing fact, but the state of a man's mind is as much a fact as the state of his digestion. It may be difficult to prove the state of a man's mind at a particular time but if it can be ascertained, it is as much a fact as anything else. A misrepresentation as to the state of a man's mind is, therefore, a misstatement of a fact.'"
Roberts v. James, supra, is also reported in 32 Am. Eng.Ann. Cas. (at p. 859), with a very elaborate footnote (at p.862).
In Freggens v. Clark, 100 N.J. Eq. 389, Vice-Chancellor Backes held: *Page 377 
"A false affirmation of a fact in the future, held to be actionable on a bill to rescind a contract of sale of land.
"For breach of a promise of a future state or condition, the remedy lies in damages at law, or in abatement of the debt, if the breach be set up in defense of a suit to foreclose a mortgage securing a debt."
In Zuckerman v. Geller, 103 N.J. Eq. 145, Vice-Chancellor Backes, again following the rule laid down in Roberts v.James, supra, held:
"A contract is fraudulently procured when induced by a promise to do a thing in the future when there is an existing intention not to do it. The false promise is a misrepresentation of an existing fact and is actionable."
In Freggens v. Clark, supra, the learned vice-chancellor, quoting from Pomeroy (4th ed.) § 877, with particular reference to the notation of cases, said:
"Some of these cases may be referred to the doctrine of equitable estoppel; but it is plain that where the representation is that of a fact in the future, and not a mere promise, it is relied upon, and turns out to be false, the rights and remedies of the injured party are the same as those which arise from the fraudulent misrepresentation of an existing fact."
From an examination of these authorities it becomes evident, it seems to me, that for complainant to succeed herein, it was incumbent on him to prove that the representations relied on by him were made in bad faith and with a then present intention on the part of the defendant not to abide by the promises.
A careful reading of the testimony fails to disclose any intention on the part of the defendant, at the inception of the contract, to not put in the improvements, which it had contracted and agreed to do.
The tract to the northeast, known as tract No. 1, had been developed and defendant had contracted with an engineer to fix the grades, c., for the fill on tract No. 2 (the tract in question), the fill was actually made and the entire tract brought to grade. The streets were laid out as delineated on *Page 378 
the map; Pacific avenue had been graded and graveled, and the curbs set and sidewalks laid. A portion of Denver and Syracuse avenues received like treatment. The work of putting in curbs, setting sidewalks, c., was being done by one cement contractor under an estimate of so much per foot and I am satisfied that defendant intended to complete its undertaking, as it agreed to do, with complainant.
That the defendant did not so complete its agreement as to the curbs and sidewalks is also evident, and the reason given by defendant is that complainant breached his agreement by not paying the mortgage debt when it was due.
I am not concerned with the validity of the reason given by the defendant for non-curbing and paving. It makes no difference in this suit whether the reason for non-performance was valid or not, because, if the failure of the complainant to pay the mortgage was the reason which led to the nonfulfillment of defendant's original promise, it was a ground for non-performance which developed after the making of the contract and certainly is no part of an intention not to perform at the inception of the promise.
Complainant says that evidence of a pre-conceived fraudulent determination not to improve, existing at the time of the execution of the contract, is the testimony of the president, who, complainant says, testified that the defendant never intended to curb or sidewalk excepting on one side of the street at the location of complainant's lot. This contention of complainant's arose out of an erroneous impression of the testimony. Mr. McDevitt, defendant's president, was being examined as to the costs of sidewalks and curbs, which he fixed at $1.10 per running foot, and had testified the distance between Denver and Charlestown avenues, along Ocean avenue, and had given the approximate distance as one thousand fifty feet, and the question was asked:
"Q. That only includes one side, doesn't it, and one sidewalk on each street and one curb on each street? A. That is right.Q. Doesn't include the curbing on both sides of Ocean avenue or curbing on both sides of Charlestown avenue? A. It so happens, however, that Ocean avenue is the *Page 379 
last avenue before the beach and I do not believe there were provisions for paving it, but it would have cost very little over $2,000 to have put in the curbs and sidewalks on both Ocean avenue and Charlestown avenue so we could have got access. Q.
On his side of the street? A. On his side of the street."
This testimony, surely, is not evidence that the defendant never intended to curb and sidewalk both sides of the street, but is merely evidence as to the cost of curbing and sidewalking on one side.
I can conceive of a situation that might lead to an inference that when the promises were made, at the inception of the contract, the intention to perform depended on contingencies known to the promissor and unknown to the promissee. Such a case would arise when the developer of land promises to improve, knowing that his ability to perform depended on his ability to collect from sale of the lots; but this situation is not before me under the evidence in the instant case, and, therefore, I am not dealing with the situation that presents itself when one party to a contract conceals some fact, which is material and which is within his own knowledge, and which it is his duty to disclose. Gordon v. Schellhorn, 95 N.J. Eq. 563.
If, at the time of the inception of the contract defendant knew that its ability to perform depended on sales and collections, it was unquestionably his duty to make disclosure to complainant; but there is no proof of such knowledge other than non-performance, and the non-performance is based on an entirely different reason, that is to say, non-performance on the part of the complainant.
The reason for non-performance may not be justified, but it does not disclose any knowledge or inability by reasons known at the inception of the contract and which should have been divulged.
In this connection I recognize that the duty to disclose may appear either expressly or by implication under the case ofKeen v. James' Ex'rs, 39 N.J. Eq. 527, wherein Mr. Justice Dixon, quoting Pomeroy, laid down the rule: *Page 380 
"A second class embraces those instances in which it appears that either one or each of the parties, in entering into the contract or other transaction, expressly reposes a trust and confidence in the other; or else, from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied. The nature of the transaction is not the test in this class. Each case must depend upon its own circumstances. The trust and confidence, and the consequent duty to disclose, may expressly appear by the very language of the party; or they may be necessarily implied from their actions and other circumstances."
I am unable to gather from the evidence any duty to disclose on the part of the defendant, because there is an absolute lack of proof that such a condition of inability to perform without collections from other sales was existing at the inception of the contract, or that it in fact existed in August of 1930.
My conclusion is, that the bill of complaint must be dismissed without prejudice to any defense that may be interposed to the foreclosure of the purchase-money mortgage, if foreclosure proceedings are instituted.