[File No. 6439.]

FEDERAL LAND BANK OF ST. PAUL, a Corporation, and Federal Farm Mortgage Corporation, a Corporation, Appellants, v. RUDOLPH KOSLOFSKY, Nome State Bank, a Corporation, and A. F. Fir,

and

NOME STATE BANK, a Corporation, and A. F. Fir, Respondents.

(271 N. W. 907.)

Opinion filed December 12, 1936.   On rehearing March 20, 1937.

*Paulson & Pearce* and *John Thorpe* (*Peyton R. Evans, Harold W. Lee, Michael A. Schmilt,* and *Charles E. Houston,* of counsel), for appellants.

324

*Charles G. Bangert,* for respondents.

MORRIS, J. This is an equitable action. The defendant demurred to the complaint upon the grounds "that the court has no jurisdiction of the subject of the action" and "that the plaintiffs' complaint does not state facts sufficient to constitute a cause of action." The District Court denied an application of the plaintiffs for an injunction restraining the Nome State Bank and A. F. Fir during the pendency of the action from transferring or assigning the note and chattel mortgage described in the complaint. The plaintiffs appeal from an order sustaining the demurrer and from the order denying the injunction.

We will first consider the sufficiency of the complaint. The demurrer admits the truth of all well pleaded facts and those presumed or reasonably or necessarily inferred from the facts alleged in the complaint. Torgerson v. Minneapolis, St. P. & S. Ste. M. R. Co. 49 N. D. 1096, 194 N. W. 741. The complaint, after setting forth preliminary allegations as to the incorporation and places of business of the corporations involved, and that the defendant Fir was during the times mentioned in the complaint the cashier of the defendant Nome State Bank, alleges that in October 1933 the defendant Koslofsky applied to The Federal Land Bank and Land Bank Commissioner for loans under the provisions of the Emergency Farm Mortgage Act of 1933 on 320 acres of land and included, among the stated purposes for which the loans were desired, the payment of a debt of $1600.00 which he owed to the Nome State Bank which was secured by a chattel mortgage. We will further summarize the statements in the complaint pertinent to the issue raised by demurrer. On November 13, 1934 the defendants Fir and Nome State Bank falsely represented that the latter would accept $750.00 in full payment for its claim and executed an instrument known as a "creditor's agreement" which in part stated,

"That I will accept in full and complete settlement and payment of my above claim the sum of $750.00, and that I have not, directly

or indirectly, made or entered into any agreement or understanding with anyone whomsoever whereby I shall receive from said debtor(s) any note, mortgage or other consideration save and except the sum last above mentioned; that when such sum has been received by me that said debtor(s) will not remain indebted to me upon any account whatsoever; that I will not, after having received such sum, attempt in any way, directly or indirectly, to collect, nor will I accept, from said debtor(s) upon and because of the above claim anything of value whatsoever."

This agreement was signed "Nome State Bank by A. F. Fir, Cashier." These false representations were made upon the instigation and with the knowledge and consent of Koslofsky. At the time of making these representations, the Nome State Bank and Fir did not intend to accept $750.00 in full and complete settlement of the claim, but intended to collect and Koslofsky intended to pay the sum due the bank in excess of the settlement. The Federal Land Bank of St. Paul and the Land Bank Commissioner (to whom the Federal Farm Mortgage Corporation is successor) knew nothing of the falsity of the representations contained in the creditor's agreement, but believed them to be true and relied upon them in making the loans to Koslofsky. The loans were completed and $750.00 was paid to the Nome State Bank on November 15, 1934. On or about that date Koslofsky executed and delivered a chattel mortgage signed by himself and his wife to the defendant Fir, dated November 15, 1934 for $1,179.50 due September 15, 1935, which covers forty-six head of cattle, fourteen horses, all the farm machinery which the mortgagors owned, and feed for the livestock. The only consideration for this instrument was the balance of the prior indebtedness from Koslofsky to the Nome State Bank. The mortgage is past due and "if enforced against said defendant Koslofsky, he will be without equipment with which to operate the land which he has mortgaged to the plaintiffs and will be unable to perform his obligations to the plaintiffs and he is thereby deterred and impeded in the performance of his obligations to the plaintiffs, to their damage." Unless restrained by the court, the defendants Fir and Nome State Bank will pursue Koslofsky and attempt to collect the note and mortgage.

The creditor's agreement constitutes a representation on the part of the Nome State Bank that it has not entered into any agreement or understanding whereby it would receive the note and mortgage from Koslofsky. The complaint states that this representation was false and was made with the intent to fraudulently induce the Federal Land Bank and the Land Bank Commissioner to make the loans. The complaint sets forth actual fraud as defined by § 5849, Compiled Laws, which reads as follows:

"Actual fraud within the meaning of this chapter consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

"1. The suggestion as a fact of that which is not true by one who does not believe it to be true.

"2. The positive assertion in a manner not warranted by the information of the person making it of that which is not true, though he believes it to be true.

"3. The suppression of that which is true by one having knowledge or belief of the fact.

"4. A promise made without any intention of performing it; or,

"5. Any other act fitted to deceive."

See also Tamlyn v. Peterson, 15 N. D. 488, 107 N. W. 1081.

Fraud, in order to support either a legal or equitable action, must have produced an injury. A fraud which has injured no one cannot be made the basis of an action. The complaint sets forth that the plaintiffs would not have made the loans unless the creditor's agreement had been made by the Nome State Bank. It follows that the plaintiffs would not have parted with their money by making the loans to Koslofsky and the Nome State Bank would not have benefited by receiving $750.00 in cash had it not been for the fraudulent representations. By parting with their money upon these representations, the plaintiffs have suffered an injury as the direct result of the fraud practiced upon them.

In cases of fraud, courts of law and equity generally have concurrent jurisdiction. Comp. Laws 1913, § 7349; 12 R. C. L. 404; Story, Eq. Jur. 14th ed. § 260; Fred Macey Co. v. Macey, 143 Mich.

138, 106 N. W. 722, 5 L.R.A.(N.S.) 1036. A person who has been induced by fraudulent representations to enter upon a contract, has two legal remedies open to him. He may rescind the contract and sue to recover the consideration parted with, or he may retain what he has received under the contract and bring an action for damages for injuries sustained by reason of fraud. Sonnesyn v. Akin, 14 N. D. 248, 104 N. W. 1026; Brown v. Ball, 29 N. D. 223, 150 N. W. 890; Dalheimer v. Lucia, 50 N. D. 78, 194 N. W. 925. If legal remedies are inadequate a defrauded party may bring an action in equity which may take various forms, the most important being rescission, cancellation, reformation, and specific enforcement. "This latter class of remedies may assume an unlimited variety of forms, as the circumstances may require. It includes, among others, the compelling the fraudulent party to make good his representations; . . ." Pom. Eq. Jur. 4th ed. § 910. The fact that the plaintiffs have not asked for rescission is not an argument against the availability of other equitable relief. Complete rescission would only entitle the plaintiffs to a recovery of the consideration which they were induced to part with under the fraudulent contract. This consideration consists of money loaned to Koslofsky, $750.00 of which went to the Nome State Bank in settlement of its claim. Other sums went to other creditors who are not parties to the fraud, and against whom rescission would be unavailable. Rescission could only result in a judgment against the fraudulent parties for restoration of the consideration received. The plaintiffs already have Koslofsky's promise to repay, which is secured by a real estate mortgage. It does not appear that either rescission or a suit for damages would afford the plaintiffs an adequate remedy either in law or equity.

In this case the plaintiffs have an election of equitable remedies. They have elected to compel the fraudulent parties to make good their representations by an action in the nature of specific performance. They stand upon the contract which was fraudulently induced and seek to compel the defendants, at least in a measure, to carry out the promise upon which the Federal Land Bank and Land Bank Commissioner were induced to rely. Equity has jurisdiction to grant such relief and to render it completely effective. Pom. Eq. Jur 4th ed.

§ 899, and note 1. "Fraud is one of the recognized subjects of equity jurisprudence, and courts of equity will relieve against fraud affecting substantial rights in whatever form it may appear." Geiger v. Merle, 360 Ill. 497, 196 N. E. 497.

The defendants Fir and the Nome State Bank have accepted, and Koslofsky has executed, a note and chattel mortgage covering an indebtedness which the defendants represented to be fully paid and cancelled. If these instruments which are founded upon the original fraud, are injurious to the plaintiffs' rights under the contract upon which it has elected to stand, they should and will be cancelled by a court of equity. An injured party may compel a fraudulent party to make good his fraudulent representations. Pom. Eq. Jur. 4th ed. § 899. This is especially true if the fraudulent party does or is about to do further injury to the defrauded party. Tompson v. National Bank, 106 Mass. 128. Such further injury is specifically alleged in paragraphs twenty-one and twenty-two of the complaint dealing with the effect of this note and chattel mortgage on Koslofsky's ability to perform his part of the contract.

The injury which the plaintiffs may sustain from the note and chattel mortgage is not capable of measurement in specific damages, but that does not prevent a court of equity from granting appropriate relief, rather it tends to establish the necessity for equitable relief. Pom. Spec. Perf. of Contr. §§ 15 and 34; Caramini v. Tegulias, 121 Conn. 548, 186 A. 482, 112 A.L.R. 666. Where there is an injury or a threatened injury from fraud, but no basis for adequate compensation in damages, the situation lends itself directly to equitable consideration. The Court of Chancery of New Jersey has recently said, "When a case of fraud is established a court of equity will set aside all transactions founded upon it by whatever machinery they may have been effected and notwithstanding any contrivance by which it may have been attempted to protect them. Kerr, Fraud & Mistake, 43, 44; Turner v. Kuehnle, 70 N. J. Eq. 61, 62 A. 327." Brittingham v. Huyler, 178 N. J. Eq. 352, 179 A. 275, affirmed in 120 N. J. Eq. 198, 184 A. 529.

The jurisdiction of an equity court to direct the cancellation of instruments generally is well recognized, and in the absence of an ade-

quate legal remedy may be used to protect legal as well as equitable rights. Such relief is not confined to the parties to the instrument sought to be cancelled, but may be obtained at the instance of one not a party to the instrument whose legal or equitable rights are affected thereby. 4 R. C. L. 487.

The defendants argue that the note is past due and non-negotiable and that a court of equity will not entertain an action for the surrender and cancellation of non-negotiable instruments. They cite Cable v. United States L. Ins. Co. 191 U. S. 288, 48 L. ed. 188, 24 S. Ct. 74; Buzard v. Houston, 119 U. S. 347, 30 L. ed. 451, 7 S. Ct. 249; Erickson v. First Nat. Bank, 44 Neb. 622, 62 N. W. 1078, 28 L.R.A. 577, 48 Am. St. Rep. 753. These cases support the doctrine that the maker of a non-negotiable instrument is denied equitable relief if it appears that he has an adequate remedy or defense at law. This case is entirely different. Equitable relief is sought not by the maker of the note, but by those with whom the maker and payee had agreed that no such note would be given, that the debt represented by the note would be fully paid and satisfied by the sum received from the loan to Koslofsky, and that no further payment would be accepted by the Nome State Bank.

The note and chattel mortgage were executed as part of a fraud, in furtherance of its perpetration and in violation of the agreement whereby Koslofsky was released from a part of his debt in order that the loans might be obtained. An agreement which involves the perpetration of a fraud upon a third person is unenforcible. Williston, Contr. § 1738. The note and chattel mortgage are tainted with fraud and are promises in direct violation of the creditor's agreement. They are unenforcible. Federal Land Bank v. Blackshear Bank, 182 Ga. 657, 186 S. E. 724; Jessewich v. Abbene, 154 Misc. 768, 277 N. Y. S. 599.

The situation presented by the complaint is this. The plaintiffs seek the surrender and cancellation of a note and chattel mortgage which were executed pursuant to a fraudulent understanding between the mortgagor and mortgagees whereby the plaintiffs were injured in being induced to make a loan which they would not have otherwise made. The note and chattel mortgage constitute promises on the

part of Koslofsky to further violate the agreement under which the loan was obtained. His compliance with these promises or their enforcement by the defendant Fir will injure the plaintiffs by deterring and impeding Koslofsky in the performance of his obligations to the plaintiffs. Since the note and chattel mortgage are unenforcible, neither the Nome State Bank nor A. F. Fir will suffer any injustice by their cancellation, but such cancellation will afford relief against injury to the plaintiffs. This situation appeals directly to the remedial powers of a court of equity. The complaint states a cause of action in equity and the demurrer should be overruled.

The plaintiffs further contend that the court erred in dissolving the temporary injunction and denying the plaintiffs application for an injunction pending the trial of this action. "The granting or refusal of a temporary injunction is a matter largely in the discretion of the trial court, and its order will not be disturbed except in case of a clear abuse of discretion." Sand v. Peterson, 30 N. D. 171, 152 N. W. 271. It is the well settled law of this state. Bartels Northern Oil Co. v. Jackman, 29 N. D. 236, 150 N. W. 576; Bessel v. Bethke, 56 N. D. 1, 215 N. W. 868.

Under § 7529, Compiled Laws of North Dakota for 1913, par. 2, "when during the litigation, it shall appear that the defendant is doing, or threatens, or is about to do, or procuring or suffering some act to be done in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act." The plaintiffs ask for an order restraining defendants Fir and Nome State Bank during the pendency of this action from assigning or transferring the note and chattel mortgage and as grounds therefor state that they "anticipate and fear" that these defendants will make such transfer or assignment. Such a showing is not sufficient under the statute. The trial court did not err in denying such injunction.

The order sustaining the demurrer is reversed. The order denying the injunction is affirmed.

BURKE, Ch. J., and CHRISTIANSON, BURR, and NUESSLE, JJ., concur.

Morris, J. (On Rehearing) A rehearing was granted and the case reargued. We have again considered the record and briefs and we adhere to our former opinion. Counsel for plaintiffs has emphasized both in the briefs and oral argument the fact that the plaintiffs are instrumentalities of the United States. By bringing this action the plaintiffs appeal to the equitable powers of the courts of this state. The transaction, whence springs the plaintiff's right to relief, is essentially private in character. It is a loan of money to a private individual secured by mortgages upon his private property. We have, therefore, applied equitable principles and have determined that the plaintiffs are entitled to equitable relief without regard to the status of the plaintiffs as instrumentalities of the Federal Government. Equity bears upon the transactions of such instrumentalities with the same gravity as upon those of private citizens.

Christianson, Ch. J., and Burr, Nuessle, and Burke, JJ., concur.