FIRST NATIONAL BANK OF CROWN POINT, INDIANA, A CORPORATION, *v.* ST. JOHN EVANGELICAL CHURCH, A CORPORATION

[No. 27,701. Filed April 27, 1942.]

*Frank B. Pattee* and *Wendell C. Hamacher*, both of Crown Point, for appellant.

*Steward & Steward*, of Gary, for appellee.

SWAIM, J.—On March 12, 1925, the appellant loaned the appellee church $3,000.00. This loan was evidenced by a promissory note, payable to the order of William H. Zieseniss, on or before five years after date, and was secured by a real estate mortgage upon the appellee's parsonage. On the same day Zieseniss assigned the note and mortgage, without recourse, to the appellant. At the same time the appellant, as additional security for the loan to the appellee, required the appellee to furnish an accommodation note for the same amount, signed by Zieseniss and two others and maturing at an earlier date than the mortgage note. The proceeds of this loan were received and used by the appellee church. The appellant bank carried this loan on its books as if it were evidenced by the accommodation note but on some of the records, following the names of the makers of the note, there was the explanatory notation "Church Note."

Sometime thereafter Zieseniss, as surety for Henry C. Peters, executed two additional notes, one for the sum of $4,000.00 to the appellant and one for the sum of $5600.00 to another bank. On May 4, 1934, the said Zieseniss procured a mortgage loan from the Federal Land Bank of Louisville and, in connection with this loan, the cashier of the appellant, for and on behalf of the appellant, signed a "Creditor's Statement of

Indebtedness and Authority for Payment" addressed to said Federal Land Bank, which statement represented that the said Zieseniss was indebted to the appellant on an unsecured note for $7,000.00 and agreed that the appellant would accept, in full satisfaction of said claim, the sum of $3,860.00 in bonds of the Federal Farm Mortgage Corporation, at face value and/or cash, at the option of the Federal Land Bank, and further agreed "that directly or indirectly no note, mortgage, or other consideration will be received from the debtor, other than the consideration paid by the Federal Land Bank and/or the Land Bank Commissioner, and that when said consideration is paid all claims of this creditor against the above named debtor will have been satisfied in full." While said creditor's statement did not give any further details as to the $7,000.00 claim of the appellant against Zieseniss than that it was evidenced by an unsecured note, it seems perfectly clear from the evidence and from the consideration of the creditor's statement as a whole that the appellant intended that said $7,000.00 should include the liability of Zieseniss as surety on the $4,000.00 Peter's note and his liability on the $3,000.00 accommodation note given in connection with the church loan.

Upon the closing of said loan from the Federal Land Bank to Zieseniss the appellant received $3,654.00 in cash in lieu of said bonds and with said amount, pursuant to a prior agreement with Zieseniss, paid and satisfied the Peters note upon which Zieseniss was surety and applied none of the proceeds of said loan to the payment of the $3,000.00 accommodation note. When the accommodation note was renewed from time to time it was made for the amount of the balance then still unpaid on the appellee's mortgage loan. The last

renewal of the accommodation note was made on July 27, 1935, for $2,418.39.

In September, 1935, the appellee sold its parsonage property, and the purchasers thereof procured a loan in the amount of $2,400.00 from the appellant to apply on the purchase price, giving their note and purchase money mortgage as security therefor. Thereupon, the proceeds of said purchasers' loan were used to pay the mortgage debt of the appellee, on which there was an unpaid balance of $2,400.00, and said mortgage of the appellee was released.

In December, 1939, the then minister of the appellee church called on the appellant and demanded that the appellant pay back said $2,400.00 either to the appellee or said Zieseniss. The appellant refused to do this and the appellee then brought this action to recover of the appellant the sum of $2,740.00, on the theory that the purchaser of the parsonage property had paid this amount of the purchase money to the appellant for the use and benefit of the appellee.

A trial to the court on the issues joined resulted in a finding for the appellee in the sum of $1,654.28 with interest at six per cent from September 10, 1935, and judgment for the appellee was entered accordingly.

The appellant's motion for a new trial, on the grounds that the decision of the court was not sustained by sufficient evidence and was contrary to law; and that the court erred in the assessment of the amount of the recovery in that the amount of the recovery was too large, was overruled, and this action of the court is assigned as error.

The appellant contends that the inclusion of the liability of Zieseniss on the accommodation note in the total liability described in the creditor's statement and the agreement to accept, and the acceptance of, the proceeds

of the Federal Land Bank loan in full payment of said liability did not affect the liability of the appellee as principal on its debt to the appellant; and that the amount received by the appellant from the proceeds of the sale of the parsonage was only the amount which was still unpaid and due on the original mortgage debt of the appellee.

The appellee insists that the appellant, by receiving the proceeds of the Federal Land Bank loan after having agreed in the creditor's statement given in connection with the loan to accept said proceeds in full satisfaction of its $7,000.00 claim against William Zieseniss which included the amount of the accommodation note held by the appellant in connection with the church mortgage loan, thereby satisfied the church debt; that the proceeds from the sale of the parsonage property were applied to a debt which had already been fully paid and satisfied; and that the appellee is entitled to recover in this action for money had and received the amount so misapplied by the appellant.

With this contention of the appellee we cannot agree.

Counsel for the appellee, throughout appellee's brief, has repeatedly stated, as a statement of fact, that the appellant has overpaid itself on the debt of the appellee. For example, on page 30 of the appellee's brief it is stated:

"Clearly appellant has collected from appellee church not $3,000.00 and interest . . . the amount of this debt, but $4,654.28 and interest. Why should appellant under any circumstances be permitted to make such a profit out of its own chicanery and trickery perpetrated on the helpless farmer, Wm. Zieseniss, and this innocent church who was not aware of this 'secret, private, oral understanding' existing between farmer Zieseniss and appellant's cashier Lehman?"

Again, on page 38 of the appellee's brief, counsel for appellee said:

"And appellant succeeded quite well with its nefarious plan because up to the time appellee church filed this suit appellant had collected and paid itself $4,654.28 plus 10 years interest on the whole sum and had obtained appellee church's parsonage property in the process."

There is no evidence to support these statements.

The evidence in this case clearly shows that when the loan from the appellant to the appellee was made, the appellee received from the appellant $3,000.00 in cash, which it used; that the appellant received in payment of this loan only $3,000.00 principal, with interest thereon to the date of the payment; that if the appellant by reason of the judgment herein should be compelled to pay to the appellee the sum of $2,165.71 it will result in the appellee receiving from the appellant the total sum of $5,165.71, for which the appellee has paid only $3,000.00, a profit to the appellee of $2,165.71 at the expense of the appellant. It is difficult to conceive of any one resorting to equity to attempt to accomplish such an inequitable result.

In attempting to support the judgment obtained below the appellee cites *O'Neil* v. *Johnson et al.* (1939), 29 Fed. Supp. 307; *Smeltzer* v. *McCrory* (1937), (Tex.) 101 S. W. (2d) 850; *Federal Land Bank et al.* v. *Koslofsky* (1937), 67 N. D. 322, 271 N. W. 907; *Federal Land Bank et al.* v. *Blackshear Bank* (1936), 182 Ga. 657, 186 S. E. 724; *Chaves County Bldg. & Loan Ass'n* v. *Hodges, et ux.* (1936), 40 N. M. 326, 59 P. (2d) 671, and *Bealkowski* v. *Powers et al.* (1941), 310 Ill. App. 662, 35 N. E. (2d) 386. In each of these cases it was held, on the plea of the debtor or the Federal Land Bank, that notes taken or held by the creditor in vio-

lation of a "scale-down" agreement, which the creditor had made with either the Federal Land Bank or the Home Owners Loan Corporation, were void and unenforceable. In *O'Neil* v. *Johnson, supra,* the court pointed out two reasons for this holding, first, that to permit the creditor to rebuild the very debt structure which was reduced by the "scale-down" agreement would put the farmer back in his old position and, although the Federal Land Bank would thereafter hold a first lien against the farmer's land, such a lien would not give "the true security which is intended, namely, the security of a successful farm, whose earnings are ample to assure repayment of the Land Bank loan. The farmer, as already demonstrated, is unable to realize sufficient income to take care of his obligations under his former load of debts. Hence the courts declare promissory notes obtained in violation of a scale-down agreement, and which recreate the old debt structure, void."

In the second place the purpose of the Federal Land Bank law was to extend relief to farmers so that they would be able to continue the operation of their property. "By means of debt reduction, the farmer was to be placed in a position where he might make a success of his business. If the individual creditor were permitted to ignore the debt reduction and were allowed to exact notes for the balance of the old debt, the farmer would be no better off than he had been before the Land Bank came to his assistance with a loan."

The appellee contends that these cases apply to the instant case and make the church note and mortgage, held by the appellant, void as of the time the appellant accepted the proceeds of the Federal Land Bank loan to Zieseniss. The appellant makes this contention on the theory that there was

only one $3,000.00 debt owing to the appellant at the time it made the "scale-down" agreement with the Federal Land Bank, and that this one debt was included in the "scale-down" agreement. It is true that there was only one $3,000.00 debt held by the appellant at that time but on that one debt the appellee church was liable as principal and the liability of Zieseniss as a maker on the accommodation note, was only a contingent liability as a surety for the church debt. If the appellant had attempted to enforce the liability of the accommodation note against Zieseniss the rule of law announced in the above decisions would have applied. It does not follow, however, that because the appellant could not enforce the liability of Zieseniss, on the accommodation note as surety for the church debt, it could not enforce the liability of the principal debtor. The release of a surety under circumstances such as these does not release the principal. The liability of the church was not mentioned in the creditor's statement and the reasons announced for the holding in the above cases furnish no reason for holding the liability of the appellee church cancelled in this case.

The appellee admits that at the time the appellant received the proceeds of the Federal Land Bank loan the balance of the principal due on the church debt from the appellee was $2,400.00. Since the obligation of the appellee as principal was not destroyed by the receipt by the appellant of the proceeds of the Federal Land Bank loan, the payment to the appellant of $2,400.00 from the proceeds of the sale of the parsonage amounted simply to the payment by the appellee of the balance due on its debt to the appellant, and there is neither any legal nor equitable reason for the return of this money to the appellee. Equity will not imply a promise of a creditor to repay

to a debtor an amount paid to the creditor to discharge the just debt of the debtor. Equity imputes to the debtor an intention to fulfill his obligation.

Another fatal defect in appellee's case is disclosed by the facts. If the receipt by the appellant of the proceeds of the Federal Land Bank loan to Zieseniss could be held to have extinguished the debt of the appellee or any part thereof, this would amount to a payment by the surety on the debt of the principal. In such case any possible right to a refund from the creditor would belong to the surety unless the principal had repaid the surety. This is recognized by the appellee as shown by the following statement on page 42 of its brief:

> "Zieseniss was surety for the appellee church and as such surety paid $1,654.28 of the appellee church's debt to appellant; then the appellee church repaid its surety Zieseniss and owed Zieseniss no money at the time of the trial."

It is true that at the time of the trial the appellee church owed Zieseniss no money, not because they had paid him the $1,654.28, but because he, as surety, had not paid any part of the debt of the appellee church. There was no evidence from which a reasonable inference could be drawn that the appellee had repaid any amount to Zieseniss. The only testimony on this point was by Zieseniss. In his direct examination he was asked, "Is that note, and the debt represented by that note of the Church to you—has that been paid?" He answered, "That has been paid to me." On cross-examination he was asked the question, "Mr. Zieseniss, if I understood you rightly yesterday, you said that the Church has paid you what it owed you. Will you tell us what the real facts were, about that?" Zieseniss

answered that he did not know that question was put to him in that way; and that he did not recall having made such an answer. He then testified as follows:

"Q. You don't recall that: What are the facts about it—did the Church ever pay you anything?
"A. No.
"Q. They never paid you anything, did they?

"A. They paid the bank, yes.

"Q. Yes, they paid the bank; they never paid you anything, did they?
"A. No."

In reference to the payments that were made on the mortgage and note given by the appellee in 1925, reducing the mortgage debt down to $2,400.00, Zieseniss testified as follows:

"Q. Yes. Those payments all came from the Church, didn't they?
"A. They came from the Church, yes.
"Q. You never paid anything on the note yourself?
"A. No."

In oral argument counsel for appellee at first insisted that Zieseniss had been repaid by the Church; then said that there was evidence to sustain a finding of such repayment; and finally admitted that no such repayment had been made. The above testimony by Zieseniss, of course, furnishes no basis for an inference that he had been repaid in any amount by the church. Without such repayment to the surety the principal could have no possible equitable claim to a refund.

Since the decision of the trial court is not sustained by the evidence and is contrary to law the judgment is reversed and the trial court is instructed to grant the appellant's motion for a new trial.

NOTE.—Reported in 41 N. E. (2d) 197.