[File No. 6256.]

JOSEPH A. SCHIEBER, Respondent, v. NICK SCHIEBER, Appellant.

(256 N. W. 159.)

Opinion filed April 19, 1934.   On rehearing August 11, 1934.

*Jacobsen & Murray,* for appellant.
*Otto Thress,* for respondent.

BURKE, J. In this action the plaintiff claims that on the 6th day of July, 1928, the defendant conveyed to the plaintiff by warranty deed the southwest quarter of section 24, township 134, range 97; that at said time, and as a part of the same transaction, the plaintiff and defendant entered into an agreement in writing by the terms of which plaintiff agreed to pay to the defendant the sum of $600.00 each and every year thereafter during the natural life of the defendant; that thereafter on or about the 1st day of November, 1929, the parties, by mutual agreement, modified said contract, the defendant agreeing to accept and the plaintiff agreeing to pay the sum of $1,100.00 in cash and upon such payment the contract of July 1928 should become null and void and thereafter the plaintiff did pay to the defendant the sum of $1,100.00 as required by the modified contract. To the complaint there is a prayer for judgment annulling the contract.

The defendant denies generally, admitting the execution of the deed and the execution of the contract and alleges that there is now due upon said contract the sum of $3,000.00 and prays for judgment against the plaintiff in the sum of $3,000.00; that he be adjudged to have a valid lien or mortgage against the said land and for a foreclosure of the lien and a sale of the land in satisfaction of the judgment.

The case was tried to the court, findings of fact and conclusions of law were made favorable to the plaintiff and from a judgment entered thereon the defendant appeals.

The defendant, Nick Schieber, is eighty years of age and the plaintiff, Joseph Schieber, is his son. The deal between the father and son was to insure a home and support for Nick Schieber while he lived. After the contract was entered into in 1928 the defendant went to Oregon and on the 22nd day of January 1929 he applied for entrance into the German-Baptist Old People's Home Society in Portland, Oregon, and at that time he paid the said Home $800.00 in cash and gave his note, payable to said Home, for $500.00.

The agreement with the Home further provided that the sum of

$1,300.00 when paid would belong absolutely to the Society but providing that if the said Nick Schieber left at any time within a year, or if he was expelled at any time for violation of the rules of the institution his money should be returned, excepting the sum of thirty dollars per month for his support while in the institution, but in case he remained in the Home obeying the rules and by-laws he was to receive from said Home his board, lodging, needed care, medical attention for the remainder of his life and a Christian burial.

The plaintiff testified that "Before the defendant went to Oregon he was at my home for about six weeks. At that time he said to me 'I am going out west and live in a Home, if I find one and if you pay up the Home why your indebtedness will be paid for or cancelled.'" The plaintiff thereafter received from the defendant a letter dated in November 1929, exhibit 4A, as follows: ". . . I believe you know what I told you when I left I have paid down all I could so that I should have a sure home, on the five hundred I must pay interest at 6 per cent. Therefore if I can get the money from you this fall, then I must pay it out and I won't have not even hundred dollars left, but I see to it that I come out and as I told you when I have paid this debt then you need not give me any more as I told you I think if I have $100 or $150 then I have enough, because I do not want to put any money in a bank, because if I should die it is lost anyway. Therefore you must try, the sooner I can pay the debt the less interest I have to pay." On receipt of this letter the plaintiff disposed of some life insurance and sent his father a check for $500.00. On November 25, 1929 Nick Schieber wrote to Joseph Schieber as follows: "I am very glad that you send me the money now I am saved and can say I have a home and it has helped you too because it relieved you of a great debt; only I am short but I must economize. I am sorry that just this year the crops are poor but I think both of us will know how to help ourselves. Wagendorf wrote me that you asked him whether I am in Mott, you must think I spend my money traveling around the world I have spent enough of my money traveling till I found what I need. Here I send you the contract from that you can see that I wrote you the truth."

The defendant denies that he had any such conversation with the

plaintiff before going to Oregon and testified that in writing the letter he did not intend to release his son from his total indebtedness. The fact is, however, that very soon after Nick Schieber arrived in Portland, Oregon, he found this German-Baptist Home and on the 22nd day of January 1929 he made application for admission as an inmate in such Home. Then in the first letter he says "You Joseph, I believe you know what I told you when I left." This refers to some conversation that he had with Joseph before he left for Oregon and in the next breath says "I have paid down all I could so that I should have a sure home." This follows immediately his statement to Joseph, viz.: "I believe you know what I told you when I left," and the inference is that he told Joseph something about entering a Home and that he had now paid down all he could so that he would be sure of a home. He continues: "on the five hundred I must pay interest at 6 per cent. Therefore if I can get the money from you this fall, then I must pay it out and I won't have not even hundred dollars left, but I see to it that I come out." In other words if I get this money from you this fall I will pay my debt to the Home. I will have less than one hundred dollars left, but that is alright, I can take care of myself, as I will then have a home. Then he continues: "and as I told you when I have paid this debt then you need not give me any more as I told you." Here again he refers to some conversation he had with the plaintiff before he went to Oregon. Continuing he says "I think if I have $100 or $150 then I have enough, because I do not want to put any money in a bank, because if I should die it is lost anyway."

Now, the testimony of the plaintiff that he had a conversation with the defendant before the defendant went to Oregon in which the defendant told him that he wanted to get into some Home and that if he did and the plaintiff paid the consideration for his admission into the Home his indebtedness would be paid or cancelled is corroborated, first by the fact that practically as soon as Nick Schieber got to Oregon he was looking for just such a Home. Nick claims he did not talk to him about it, but the statements in Nick's letters refer to some such conversation. Again in exhibit 5A he says "Here I send you the contract from that you can see that I wrote you the truth." Isn't it clear that he is sending the contract to the plaintiff upon the theory that there is no longer any contract between them. The deal is closed and

724

he says "I send you the contract from that you can see that I wrote you the truth." In other words when he says in exhibit 4A "When I have paid this debt then you need not give me any more as I told you." If that is not what he means then what does he mean when he says in the letter exhibit 5A "Here I send you the contract from that you can see that I wrote you the truth?" This letter, exhibit 5A, is dated the 25th of November, 1929 and the check is dated November 22, 1929. Immediately upon receipt of the check this letter, exhibit 5A, was written and the contract was returned.

There is a little dispute over the receipt for $600.00. On cross examination of the plaintiff an attempt was made to show that this $600.00 receipt was not a payment on this contract but was for a share of the crops under an old contract. The plaintiff testified that it was a payment on the contract and defendant testified that the $600.00 was payment for half of the crop, up to 1929. The contract is dated the 6th day of July, 1928 and the $100.00 check is dated July 11, 1928 and the receipt for $600.00 is dated November 28, 1928. The contract provides that the $600.00 is payable on the first day of December of each and every year, the first payment to be paid on or before December 1, 1928. There would be $600.00 due on the contract on December 1st and the $500.00 paid before it was due and the fact that it was made out and signed by the defendant when the payment was not due on the contract is a strong circumstance in favor of it being paid on the contract. In none of the letters that follow is there any claim that the first payment was not made as provided in the contract. In none of the letters does the defendant say that there is anything due on the contract and there was nothing due on the contract at the time of the payment of the $500.00 check. There would be nothing due on the contract until the first of December and the defendant acknowledged receipt of the check on the 25th of November. He does not even ask for the amount that would be due on the first of December 1929. The first of December 1929 there would be $600.00 due on the contract, but all he wants is $500.00 and he immediately acknowledges the receipt of it and tells how thankful he is to receive it, as he is now safe, that is he has a home for life. The payment before it was due is a good consideration. There is a good consideration in an agreement by the terms of which a creditor agrees to accept and does accept less

than the entire indebtedness of the debtor in satisfaction of the entire debt before it is due. Princeton Coal Co. v. Dorth, 191 Ind. 615, 133 N. E. 386, 500, 134 N. E. 275, 24 A.L.R. 1471 and extensive note, beginning on page 1474. But this case comes under § 5828, Compiled Laws, 1913, viz.: "Part performance of an obligation either before or after a breach thereof, when expressly accepted by the creditor in writing° in satisfaction, or rendered in pursuance of an agreement in writing for that purpose, though without any new consideration, extinguishes the obligation." Now in the instant case the defendant needed $500.00 to complete his payment on the Home and before a breach of his contract he wrote the plaintiff requesting the money so that he could pay that $500.00 to the Home and that when this debt was paid the plaintiff need not pay any more. On receipt of this letter the plaintiff sent him the money and on receipt of the money the defendant paid the indebtedness, immediately acknowledged receipt of the money and as evidence of his acceptance of the payment in satisfaction of his indebtedness he returned the contract to the plaintiff and said in his letter "I send you the contract from that you can see that I wrote you the truth."

First, there is defendant's letter, exhibit 4A, requesting the payment of $500.00 and stating in substance and effect that when this amount is paid to the Home the plaintiff would not be called on to pay more. It would be unnecessary to pay more as defendant was safe in a permanent home for life. Second, there is plaintiff's check for $500.00 in answer to the defendant's request. Third, there is defendant's letter, exhibit 5A, acknowledging the receipt of the money, stating how glad he was to get the money and further "I am saved and can say I have a home and it has helped you too because it relieved you of a great debt. . . . Here I send you the contract from that you can see that I wrote you the truth." This is all in the writing of the defendant. It was apparently his first purpose to take care of himself the remainder of his life by the contract, under which he was to receive $600.00 per year from the plaintiff, but he changed his mind later preferring a home in the institution in Portland. As soon as he got to Portland, Oregon, he entered the Home and whatever arrangements were made were made by him. Whatever arrangements were made with the son were made by the defendant. The plaintiff simply accept-

ed the proposals of the defendant and carried them out. There is no fraud nor is there any evidence that the plaintiff took advantage of the defendant in any way. He simply accepted his proposals and while defendant is an old man there is nothing in the record to indicate that he was not able to transact business and the judgment is affirmed.

BURR, Ch. J., and NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.

BURKE, J. (on rehearing.) A rehearing was ordered on the petition of appellant stating that the court erroneously assumes that there is evidence in the record that plaintiff paid $600.00 under the new contract, exhibit 7, in addition to the $500.00 and bases this assumption solely on a receipt dated November 28, 1928.

On page 17 of the transcript the defendant on cross examination testified as follows:

"Q. Now the only money you paid your father under this Exhibit No. 7 is this check, Exhibit No. 6? A. No.

"Q. You paid him some more? A. Yes.

"Q. By a check? A. Yes.

"Q. Where is that check? A. It should be in the lawyer's hands. If not, I have it in my pocket.

. . . . . . . .

"Q. . . . Did you make any payments other than this check, Plaintiff's Exhibit No. 7? A. Yes, I did.

"Q. You made that payment after the date of July 6, 1928? A. Yes, sir.

"Q. Produce the check. -A. I believe I must have given that to you, Mr. Thress.

"Q. Are you able to find any one check among the checks you are examining now? A. I should have two checks here, no only one, it was drawn and payable to him after that contract was entered into.

"Mr. Thress: Yes, I have some checks here.

"A. Here is a check for $100.00 and he received that and a receipt, dated November 28th, 1928, for $600.00.

. . .

"Q. I show you Defendant's Exhibit 'A' and ask you if that is the receipt you mentioned? A. Yes.

"Q. Now is that not a receipt for money you paid him under the old contract on his share of the crop? A. It is not."

The contract is dated the 6th of July, 1928. There is one check for $100.00, dated July 11, 1928, then there is the receipt dated November 28, 1928 signed by the defendant Nick Schieber, which says on its face "$600 and no/100 for the year 1928 as full payment." That was the amount due on the contract on December 1st, 1928, and it says specifically that it is in full payment for that year. In reference to the receipt appellant asked the defendant "Now is that not a receipt for money you paid him under the old contract on his share of the crop?" He answered emphatically "It is not." He had already testified that they were payments on the contract, exhibit 7. This testimony is not very material, for the decision is based on the letters which the defendant wrote to the plaintiff and which letters clearly indicate that the defendant offered to release the plaintiff from all indebtedness if he would send him the $500.00 so that he could make the payment on his permanent home in the institution in Portland.

We adhere to our former decision.

BURR, Ch. J., and NUESSLE, MOELLRING and CHRISTIANSON, JJ., concur.