[File No. 6659.]

NORMAN HOLIEN, Administrator of the Estate of Ole Holien, Deceased, Respondent, v. CECELIA STAVETEIG, Appellant.

(291 N. W. 541.)

Opinion filed March 21, 1940.   Rehearing denied April 16, 1940.

*T. H. H. Thoresen,* for appellant.
*Carroll E. Day,* for respondent.

BURR, J.   On April 27, 1938, the appellant filed with the respondent, as administrator of the estate of Ole Holien, deceased, her claim against the estate, based upon a promissory note given by the decedent to Josie Staveteig, which note appellant claims to own.   The administrator disallowed the claim; but the county judge approved and allowed it in full, and ordered the administrator to pay the claim in due course of administration.

From this order, the administrator appealed to the district court upon questions of law and fact, and demanded a trial de novo.

The district court reversed the county court, and judgment was entered to the effect that this appellant was not the owner of the note involved, "that said note is not enforceable against the estate of Ole Holien, deceased; that the indebtedness of Ole Holien  .  .  . has been released."   From this judgment, Cecelia Staveteig appealed, demand-

ing a trial de novo. So far as the facts are concerned, there is but one major dispute—the ownership of the note by the appellant.

The district court found the appellant was not the owner of the note. Such finding is entitled to appreciable weight on a trial de novo in this court. Nevertheless, as pointed out in Thede v. Rusch, 65 N. D. 34, 37, 256 N. W. 409, 410, and the cases cited therein, such finding is not binding upon this court. We are required to try the case upon the record here, giving due consideration to the finding of the district court, but making our own independent decision.

Cecelia Staveteig is the mother of Josie Staveteig and Emma Staveteig. The note is for $1,200 with interest from date at 5% per annum, payable annually, is dated December 7, 1934, and is due in one year. It bears this indorsement of Josie Staveteig—"To the Order of Cecelia Staveteig without Recourse," but no date of indorsement is shown. The record shows that the appellant and her two daughters, though individually owning papers of value, hired a safety deposit box in a bank, and used this box in common. Josie Staveteig died November 8, 1937, This note was in this common safety deposit box, and the undisputed testimony is that Josie had indorsed and delivered this note to appellant "about two months after the note was given," that the appellant was the owner of the note, and that the note was not paid. We find, as a matter of fact, that the appellant was and is the owner of the note in question.

The remaining issues are largely of law. A résumé of the facts, however, is necessary to an understanding of the issue.

For some six or seven years prior to December, 1934, Ole Holien was indebted to Mr. Staveteig, the husband of the appellant, and the father of Josie and Emma, in the sum of $10,000. To secure this indebtedness, he executed a mortgage on his farm land. Mr. Staveteig died in 1930, but prior to his death, he assigned his interest in this note and mortgage to his daughter, Josie. The mortgage was due and unpaid; the note had been permitted to run for a considerable length of time so that there was several years' interest due, and over $860 of unpaid taxes against the land. When Josie Staveteig was considering steps to enforce payment by the foreclosure of the mortgage, it was agreed between her and Ole Holien that the sum of $14,000 was due. This sum was determined at a conference between the parties, the date

of which is not shown. Apparently Holien was making an effort to pay and at a later conference it was agreed between him and Josie that the latter would accept the sum of $11,000 in full satisfaction of her claim. The record is somewhat indefinite on this subject, but it is a fair assumption that Holien attempted to secure a loan for $11,000 through the Farm Credit Administration of the Federal Government. It is the claim of the Staveteigs that whatever business transactions the mother or either of the daughters had in general was discussed in common, and a more or less uniform determination reached. The precise date on which it was agreed that $11,000 would be accepted in full payment is not shown. Some time in October, 1934, or as elsewhere stated in the record, possibly four or five months earlier, Holien, with all of the Staveteigs, was in the office of Samuel Torgerson—the secretary of the Grand Forks N. F. L. A.—and told him he was going to make a loan and what agreement had been made. Because of the date, it is clear this referred to scaling down the debt from $14,000 to $11,000.

Some time prior to December 7, 1934, Ole Holien found that he could not secure a loan from the Federal Government which would net him to exceed $7,400, and this information was communicated to the Staveteigs. The evidence is quite plain that all parties concerned agreed that Josie would accept the bonds issued and delivered by the Federal Land Bank as evidence of the loan it made to Holien, and that Holien would pay in cash the difference between the face value of the bonds and the amount which he agreed to pay, to wit: the sum of $3,600. Just when this agreement was reached is not shown, but some time prior to December 7, 1934, Holien sold wheat and disposed of other property, to the amount of $2,400, and apparently, this was all the money he could raise. On December 7, 1934, Holien, the appellant and Emma appeared in the office of one Glasserud in Grand Forks. Josie was not present. At the conference which took place at that time Holien stated he was unable to raise the $3,600 necessary, that he had raised $2,400, and asked them if they would accept a note for the remainder. Neither the appellant nor her daughter, Emma, was willing to accept this note, but after some discussion, the note was taken. At this conference nothing was said by any person with reference to Josie taking the bonds issued under the Farm Loan Administration

.mortgage, in full settlement of her claim. There could have been no such agreement, as Holien paid at that time $2,400 in cash, and gave his note for $1,200. There is nothing in the record to show that Josie Staveteig ever knew anything about the result of this conference, except the fact that she took the note, kept it, and afterwards indorsed it and gave it to her mother. However, on the day that the note was given, one Samuel Torgerson, Secretary-Treasurer of the N. F. L. A. of Grand Forks, North Dakota, signed an order addressed to "The Federal Land Bank of St. Paul," directing the bank to ship to the First National Bank of Grand Forks, North Dakota, the "Bonds of the Federal Farm Mortgage Corporation" in the amount of $7,483.83 (the $83.83 being accrued interest) for delivery to Josie Staveteig in Grand Forks (this order being on a form blank), and on the same blank, Josie Staveteig in writing approved of the shipping of said bonds to the First National Bank of Grand Forks to be delivered to her. There is nothing on this blank to show or even intimate that Josie was accepting the bonds in full settlement of all of the indebtedness due her from Ole Holien.

The record further shows that on December 22, 1934, these bonds were shipped to the First National Bank of Grand Forks, to be delivered to Josie Staveteig, and that the same were received by her on December 24, 1934.

Up to this time there was nothing whatever to show the terms of the application made by Ole Holien when he applied for his loan, or the negotiations. There are no rules and regulations introduced in evidence, no copy of the application, or of the mortgage, nor any evidence whatever to show that Josie Staveteig knew anything about the procedure. On December 24, 1934, she had received $7,400 in bonds, $2,400 in cash, and a note for $1,200 in full settlement of her claim against Ole Holien for $11,000, being the amount to which she had reduced her claim against him. We have a right to assume that she had delivered to the Farm Loan Association or some other corporation a release of her mortgage. This does not appear in the record, but it is a reasonable assumption from the fact that the application by Holien for a loan had been accepted and the bonds issued and delivered to her. In addition, on her "Approval of Shipping Instructions" she stated that if she had placed "in escrow with said bank (the First National

Bank of Grand Forks) . . . a release or discharge of claim" held by her, the bank "is hereby authorized to deliver such release or discharge upon receipt by it of such bonds."

Several weeks after this settlement had been completed,—January 19, 1935—the Secretary-Treasurer of the Grand Forks N. F. L. A. wrote to the appellant, inclosing in the letter an agreement to be signed by Josie Staveteig in this Holien matter. This agreement is designated "Creditor's Agreement," is stated to be in reference to the "Federal Land Bank loan of Ole Holien . . . through the Grank Forks National Farm Loan Association," and is addressed "to the Federal Land Bank of St. Paul for itself," and "as Agent for the Land Bank Commissioner and the Federal Farm Mortgage Corporation." This agreement, omitting formal descriptions, is as follows:

"For the purpose of inducing you to make, and in consideration of the making by you of, a loan or loans to Ole Holien of Grand Forks, N. Dak., on real estate situated in Grand Forks County, State of North Dakota, being numbered on your records loan No. 94067 D and loan No. 118–52794, and for the purpose of inducing you to release, distribute and pay out the proceeds from such loan or loans, I, the undersigned, being a creditor of those receiving such loan(s) to the extent of $11,000.00, do undertake, promise, agree and represent as follows:

"That I will accept in full and complete settlement and payment of my above claim the sum of $7,500.00, and that I have not, directly or indirectly, made or entered into any agreement or understanding with anyone whomsoever whereby I shall receive from said debtor(s) any note, mortgage or other consideration save and except the sum last above mentioned; that when such sum has been received by me that said debtor(s) will not remain indebted to me upon any account whatsoever; that I will not, after having received such sum, attempt in any way, directly or indirectly, to collect, nor will I accept, from said debtor(s) upon and because of the above claim anything of value whatsoever.

"This agreement is for the express benefit of the debtor(s) or any of them, as well as the Federal Land Bank of Saint Paul, the Land Bank Commissioner, and the Federal Farm Mortgage Corporation."

It is the contention of the respondent that under this creditor's agree-

ment, this note for $1,200 is not enforceable against the estate of Ole Holien.

Respondent urges that this Creditor's Agreement "is an unambiguous contract, susceptible of clear construction," that parol evidence is not admissible to vary, modify, or contradict its terms, and therefore evidence that Josie Staveteig did not know its import is inadmissible. However, this well-settled rule is not involved here. Josie Staveteig was dead at the time of the trial. There was no way of showing that she did not understand the terms and did not intend to sign the instrument. There is no proof offered whatever to show under what conditions or understanding she did sign it. That she signed it is clear. The rule against varying the terms of a written instrument is not applicable, for no one attempts to vary it.

Respondent urges that the doctrine of accord and satisfaction applies to this case, and cites as authority, Schieber v. Schieber, 64 N. D. 720, 256 N. W. 159, where the statutory rule (Comp. Laws, 1913, § 5828) is discussed, and where we say "where a creditor agrees to accept and does accept less than the entire indebtedness of a debtor in satisfaction of the entire debt before it is due there is a good consideration for the satisfaction of the entire debt," and show that the part performance of an obligation when accepted by the creditor in writing in satisfaction, extinguishes the obligation, although there is no new consideration.

This doctrine is not applicable to this case. Josie Staveteig did not repudiate her agreement to scale down her debt from $14,000 to $11,000. Other than stated in this Creditor's Agreement there is no intimation anywhere that she ever agreed to scale the debt to $7,400, and there is nothing to show that Ole Holien ever thought she did, for before the bonds were even delivered, he paid the cash and gave the note.

Other than recitals in the instrument, there is no proof whatever that Josie Staveteig received any consideration for executing this agreement. The exact date of signing in January, 1935, is not shown. It could not have been before January 19, as that is the date of the letter to the appellant, inclosing the agreement. When the appellant delivered it to Josie for her signature is not shown. Assuming, however, that it was signed on the 19th of January, the whole scale-down transaction between her and Holien had been executed. Nothing remained

to be done, except for Holien to pay the note. The record does not show us just when Ole Holien died, but the note shows he paid interest quite regularly and had paid the annual interest of $60 due in 1937, the payment being indorsed as of the date of December 27, 1937, and the claim was filed with administrator in April, 1938. Clearly, Ole Holien did not consider that Josie Staveteig had agreed to scale her debt to $7,400, and there is nothing to show he ever attempted to repudiate the note.

Respondent relies upon the case of Federal Land Bank v. Koslofsky, 67 N. D. 322, 271 N. W. 907, wherein we review the effect of such a Creditor's Agreement, and show that a person who has been induced by fraudulent representations to enter into a contract may retain what he has received, and if legal remedies be inadequate, may bring an action in equity to cancel such an instrument in order to protect his legal, as well as equitable, rights. This rule, made applicable to Creditor's Agreements, is one of the earliest dealing with such agreements, has been widely cited, and, so far as we have been able to ascertain, universally approved under the conditions pertaining to the case. But such a decision is in no way applicable to the case at bar. In the Koslofsky case, it was shown clearly that the debtor and the creditor, in scaling down the debt, had made application to the Federal Land Bank for a loan which was issued on the strength of said Creditor's Agreement, and that notwithstanding such Agreement, the debtor and creditor had made a secret agreement whereby the provisions of this Creditor's Agreement were not to apply as between them. In other words, they committed a fraud upon the Federal Land Bank, and conspired to interfere with and obstruct one of the lawful governmental functions of the United States in its attempt to carry out this spirit of the law whereby debts were being adjusted to the mutual advantage of debtors and creditors.

In the case at bar, the Federal Land Bank is not a party. The bank makes no complaint of fraud. There is no intimation, other than pure guess, that the loan made by the bank was in any way affected by this Agreement. It could not be so. The loan had been made, the bonds had been delivered, and the transaction closed, so far as the bank is concerned, weeks before such Creditor's Agreement was signed. So far as the record in this case is concerned, this Agreement in no way what-

ever affected the transaction between Holien and the bank. It is nowhere shown to us that the Federal statute requires such Creditor's Agreement. The Federal statute, 12 U. S. C. A. § 1016, subd. d, provides: "No loan shall be made under this section unless the holder of any prior mortgage or instrument of indebtedness secured by such farm property arranges to the satisfaction of the Land Bank Commissioner to limit his right to proceed against the farmer and such farm property for default in payment of principal."

We have a right to assume that the Land Bank Commissioner was sufficiently satisfied with the scale-down process already agreed to, for therein Josie Staveteig had limited her right "to proceed against the farmer and such farm property for default in payment of principal." She had taken $3,000 less than she was entitled to, she had surrendered her mortgage and taken an unsecured note; the bank accepted the mortgage and delivered the bonds. So far as the estate is concerned, there was no consideration whatever for this agreement.

Unless prohibited by express provisions of statute, or unless fraud against the Federal Land Bank or against the farmer is shown, there is no reason in justice and equity why Ole Holien should not pay as he agreed to do, and being dead, the claim is a valid claim against his estate.

The judgment appealed from is reversed, and judgment ordered for the appellant in accordance with this opinion.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.