Appellant's brief contains no statement of facts. As we glean them from the record, the circumstances from which the cause of action arose are as follows:
About September 20, 1920, the defendant held an auction sale, at which the plaintiff's cashier acted as clerk. The two notes in suit were executed by purchaser at such sale, one to the defendant, as payee, and the other directly to the bank; both were later endorsed by defendant *Page 697 
and delivered to the plaintiff. A verdict was returned against the defendant on both causes of action in the total sum of $234.06.
Each note contained a waiver in the following terms: "Each of the makers hereof and the endorsers hereon waive diligence, demand, notice of nonpayment and protest of this note, and guarantee its payment at maturity or any time thereafter;" and both instruments were payable on demand.
The defendant apparently received from the plaintiff the full face value of the notes at the time of the endorsement. Why one note was made payable to the bank directly is not clearly explained; but no point is made of this fact.
Fourteen specifications of errors are set out; they are grouped by the appellant under two general heads, namely, errors in excluding evidence tending to show an extension of the time of payment of the debt, and of an agreement alleged to have existed between the clerk of the auction sale and the defendant, respecting the manner in which settlements should be made with purchasers at the sale. While the cashier of plaintiff was being cross-examined under the statute defendant's counsel, without objection, asked him if there was not an agreement between the clerk and the defendant, or if there were not instructions from the defendant, to the effect that security be taken when sales were made on time. The witness denied in toto that any such agreement or instructions existed or were given. When the defendant was asked similar questions, for the purpose of eliciting this information, the court sustained objections and defendant was not permitted to give his version in regard to such alleged agreement or instructions.
Both notes were renewed, the renewal instruments being payable on demand.
(1) Being payable, according to their tenor, on demand, the instruments were due immediately and no actual demand of payment was necessary. Moreover, demand was waived. Viewing the record from any standpoint, no reversible error can be predicated upon the exclusion of evidence of want of actual demand.
(2) The testimony and offers of proof tending to show a collateral agreement with the makers of the notes that collection would not be pressed for a year, was properly excluded as tending to vary the terms of a written instrument. First State Bank v. Kelly, 30 N.D. 84, 94, *Page 698 
152 N.W. 125, Ann. Cas. 1917D, 1044. It was clearly an attempt to prove that what is a demand note upon its face evidenced in fact an obligation payable a year from its date. 10 R.C.L. 1022, and see McLeod v. Hunter, 29 Misc. 558, 61 N.Y. Supp. 73, id. 49 App. Div. 131, 63 N.Y. Supp. 153.
(3) Assuming, for the sake of the argument, that the defendant is a guarantor and is, therefore, under § 7076, Comp. Laws 1913 (192), secondarily liable within the provisions of § 7005, Comp. Laws 1913 (120), there was no such extension of time of payment as would operate to release one thus liable. The so-called renewal notes were payable on demand, like the original instruments; and they evidence nothing more than an indulgence in pressing collection which the plaintiff could rightfully extend to the maker under the original notes, without affecting the liability of one secondarily liable thereon. Section 7005, Comp. Laws 1913, (120) of the Neg. Inst. Law, defines the conditions under which persons secondarily liable on negotiable instruments are released. By the 6th subdivision such a party is released "By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, etc." The so-called renewal note is payable on demand; it was, therefore, "due at the time of its delivery." Shuman v. Citzens State Bank, 27 N.D. 599, 147 N.W. 388, L.R.A. 1915A, 728. This instrument bound the plaintiff nowise (Mercantile Trust Co. v. Donk ___ Mo. ___, 178 S.W. 113); under it the payee was not legally obligated to refrain from taking active steps to collect the debt immediately; the time of payment was not in any legal sense postponed; and had the endorser or guarantor elected to pay the instruments at or after the time the renewal demand notes were delivered, the payee would have been wholly free to deliver them and the original instruments to the defendant with full right in the latter to proceed at once to collect in any manner he saw fit. There was no variation in the terms of the original contract; and no new contract can be said to have been made between the maker and the payee to which the defendant was not a party. It would be technical in the highest degree to hold that a new contract to pay at a later time was substituted for the old and that, in consequence, the defendant must be released from his solem obligation to pay a just debt. It has been said that the contract of extension must be binding as to time, McCormick *Page 699 
Harvesting Mach. Co. v. Rae, 9 N.D. 482, 84 N.W. 346, so that the payee is thereby "precluded in the meantime from proceeding to enforce the collection of the debt." Citizens Bank v. Douglass, 178 Mo. App. 664, 161 S.W. 608; that agreements to extend the time of payment must be "for a certain time." Bank of York v. Webster, 242 Pa. 128, 88 A. 913; that there must be a "binding agreement postponing the time for payment." 8 C.J. 427.
(4) There remains to be considered the correctness of the court's ruling which is assailed in the thirteenth specification of errors. To get the situation clearly in mind, it is necessary to quote at some length from the record. The defendant was on the witness stand, undergoing examination by his own counsel.
Q. You may state whether or not, and you may answer this question yer or no, you had a conversation with Mr. Keyes concerning the manner in which said auction sale was to be settled before the auction sale was held?
A. Yes, sir.
Q. And you may state what your conversation with him was?
Mr. Ego: Objected to as incompetent and inadmissible under the pleadings. If it is an attempt upon the part of this defendant to prove the fraud that he intimates is set out in the second paragraph of his answer, it is objected to for the further reason that the answer does not state facts sufficient to constitute a defense on the ground of fraud; and on that point I would like to ask the court to bear with me a minute while I analyze this answer.
The Court: I will sustain the objection.
Mr. Remington: The defendant now offers to prove by his testimony that at the time of his endorsing the notes, exhibits 1 and 2, the cashier of the plaintiff, the witness David Keyes, stated to the defendant that the said notes were secured by chattel mortgages upon the property bid in by the debtors F.H. Cavett and C.W. Cavett, at the auction sale, and that this defendant, believing said statement to be true, and relying upon the representations of the plaintiff's cashier in that respect, signed the said notes; and that as a matter of fact said representations were false, and the notes were not secured by chattel mortgage, or in any *Page 700 
manner, and that the falsity of said representations were well know to the plaintiff and its cashier at the time of the making thereof.
Mr. Ego: To which offer the plaintiff objects upon all the grounds and for all the reasons urged to the question preceding.
The Court: The court has no objection to that offer providing you stand on it.
The witness thereupon stated that the plaintiff's cashier was present when the notes were endorsed; that the cashier assured defendant that the notes were "well secured" and that signing them "don't make any difference to you;" that defendant signed them in reliance on the truth of these representations, and not otherwise. We think the unmistakable inference from the record quoted, supra, is that the offer of proof was meant as a specification of the particulars to which the defendant would have testified had the court not sustained the objections; and that the superficial or apparent difference between the offer and the information called for by the question, is explained by the fact that the auction sale and the execution of the notes were, in the mind of counsel, regarded as substantially simultaneous acts, although in fact the notes were endorsed a few days later.
In the circumstances here disclosed we have no hesitancy in applying the elementary principle that error in excluding testimony is rendered harmless when the matters excluded are, at another point in the proceedings, brought into the record and before the triers of the facts.
We think, moreover, that it may be seriously doubted if any error was committed. At most the question, literally taken, suggested a breach of agreement by plaintiff's agent relating to the manner in which he should discharge his duties as clerk of the auction sale. It is not urged that such breach would render the instruments void; at most it would give rise to a claim for damages which possibly might be set up as a counterclaim against the plaintiff's cause of action — assuming that the alleged agreement was binding on the plaintiff. But there was no offer to prove damages as a result of the breach of the purported contract or instructions; and there is no specific suggestion that damages resulted from failure to take security. The record is vague and so crowded with unbridged gaps that it would be a travesty on the *Page 701 
administration of justice to order a new trial upon what is, at best, merely speculative error.
Judgment is affirmed.
CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, and NUESSLE, JJ., concur.