**C. R. VERRY, Plaintiff and Respondent,**

v.

**Cecil S. MURPHY, Sr., Defendant and Appellant.**

**Civ. No. 8476.**

Supreme Court of North Dakota.

Dec. 12, 1968.

Rehearing Denied Jan. 17, 1969.

Waldron & Kenner, Minot, for plaintiff and respondent.

Funke & Eaton, Minot, for defendant and appellant.

KELSCH, District Judge.

This is an appeal by the defendant from an adverse judgment recovered against him upon two promissory notes.

At the outset, we are confronted with respondent's motion for a dismissal of said appeal upon the grounds:

(1) That the appellant did not give respondent the notice required by statute of

his intention to apply for an order fixing the amount of the supersedeas bond, as required by Section 28–27–22, N.D.C.C.;

(2) That the appellant did not apply for an order to extend the time allowed by law to obtain a settlement of the statement of the case; and

(3) That the appellant obtained a certificate settling the statement of the case after the time allowed by law had expired, without making a showing of good cause therefor.

The appellant resisted said motion and we heard and considered the arguments of counsel thereon, with the understanding that we would decide the motion before we considered the appeal upon the merits.

Counsel for respondent argues, in effect, that the statute is mandatory; that it should be construed to mean what it says; and that a substantial compliance therewith is essential to confer appellate jurisdiction upon this court. Stated differently, he claims that the failure to give the notice required by statute, which is not denied, is jurisdictional and, as such, requires the dismissal of this appeal.

Rule 62(d), N.D.R.Civ.P., provides, in effect, that when an appeal is taken, the appellant may obtain a stay of execution by giving a supersedeas bond; that such bond may be given at or after the time of filing the notice of appeal; and that the stay becomes effective when the bond is approved by order of the court.

The obvious purpose of the notice required by statute is to give the judgment creditor an opportunity to object to both the sufficiency of the bond and of the sureties, if it is defective in form or substance.

■ It is well settled in this State that an appeal does not operate to stay proceedings for the enforcement of a judgment; that a judgment may be enforced unless a supersedeas bond is given at or after the time of filing the notice of appeal. A stay becomes effective when the supersedeas bond is approved by the court. Where a stay is wrongfully obtained, the proper remedy is to make application to the district court to vacate and dissolve its order approving the bond. The stay of an execution upon appeal is an independent and collateral proceeding, and a judgment creditor who feels aggrieved thereby must make his application for appropriate relief in the district court. He should not be permitted to apply for such relief, in the first instance, in the Supreme Court. Beyer v. Robinson, 32 N.D. 560, 156 N.W. 203; Wasson v. Brotherhood of Railroad Trainmen, 65 N.D. 246, 257 N.W. 635; Bonde v. Stern, 72 N.D. 476, 8 N.W.2d 457.

■ Under these decisions, the failure to give the notice required by statute is not jurisdictional; it does not invalidate the appeal nor deprive the appellate court of its jurisdiction.

The other assignments of error contained in the motion for a dismissal of the appeal relate to the settlement of the statement of the case after the statutory time had expired, without good cause having been shown therefor.

We find, from an examination of the record:

(1) That judgment was entered on April 7, 1967;

(2) That notice of appeal was served and filed on April 17, 1967;

(3) That a supersedeas surety bond was filed on April 17, 1967;

(4) That on December 15, 1967, the appellant moved for an extension of time to perfect the record for the purpose of appeal, returnable on December 26, 1967; and

(5) That on January 8, 1968, counsel for respondent filed written objections to the extension of time to obtain a transcript of the evidence and the settled statement of the case, upon the ground, among others,

that no showing was made, by affidavit, of good cause therefor.

It is true that there is no affidavit made by the appellant or his counsel in the record transmitted to us to show that good cause did, in fact, exist to warrant extension of time sought. Our record of the oral arguments made by counsel upon the motion for dismissal shows, however:

(1) That counsel for appellant claimed that he did present evidence to show the existence of good cause for the extension of time; and

(2) That counsel for the respondent admitted that some evidence was, in fact, adduced before the trial court tending to show good cause for an extension of time.

We have carefully examined the entire record but do not find a transcript of the evidence so presented to the trial court. We therefore have no record before us from which to determine whether or not the evidence adduced was sufficient to show that good cause did, in fact, exist.

■ In the absence of a record showing that good cause was not established, it is reasonable to presume that the trial court found that the evidence submitted to it was, in fact, sufficient to show that good cause did exist, and thereupon granted appellant an extension of forty-five days within which to perfect the record upon appeal, and that the statement of the case was, in fact, settled within the time so extended.

On this issue, we have consistently held:

■ (1) That the district court has the power to issue its certificate settling the statement of the case after the time allowed by law has expired, upon a showing of good cause; that a motion for such certificate is addressed to the sound, judicial discretion of the trial court, and that its decision will not be disturbed unless the record clearly shows that it abused its judicial discretion [Muhlhauser v. Becker, 76 N.D. 402, 37 N.W.2d 352; Schriock v. Schriock (N.D.), 128 N.W.2d 852; Kline v. Landeis (N.D.), 147 N.W.2d 897]; and

■ (2) That a party who makes a motion for the dismissal of an appeal has not only the burden of presenting a record proving the necessary facts, but also the burden of sustaining the grounds thereon [In re Ashbrook's Estate (N.D.), 110 N.W.2d 184].

■ There is yet another sound reason why we cannot grant respondent's motion for the dismissal of this appeal, and that is that we have held in a prior case upon a similar motion that where the certified judgment roll includes a statement of the case and the only attack is made upon the certification thereof, the respondent is not entitled to prevail upon his motion for a dismissal of the appeal. Funderburg v. Young, 68 N.D. 481, 281 N.W. 87.

■ Applying these principles of law, we conclude that the trial court had the power, upon a showing of good cause, to settle the statement of the case after the time allowed by law had expired, and that the burden rested upon the movant, Verry, to present a record showing affirmatively:

(1) That the evidence adduced was insufficient as a matter of law to constitute a showing of good cause; and

(2) That the trial court abused its discretion in finding that good cause did, in fact, exist to justify its order granting appellant an extension of time within which to perfect the record upon appeal after the time allowed by law had expired.

We find that the respondent has failed to sustain that burden, and that in the absence of a record showing that the trial court clearly abused its judicial discretion, its decision granting an extension of time will not be disturbed.

In this case, the proceedings had, the issues presented, and the contentions made in support of respondent's motion for the dismissal of this appeal are practically

identical to those raised and decided in *Funderburg*. We adhere to our decision in that case and conclude, therefore, that here, as in *Funderburg,* the respondent cannot prevail upon said motion.

It follows, from the conclusions we have reached herein, that respondent's motion for dismissal of this appeal must be and the same is hereby denied.

We now proceed to consider the appellant's first cause of action upon its merits.

 This action was tried to the court without a jury. The appellant has demanded a trial de novo, and where such demand is made it is the duty of this court to try anew and find for itself the facts of the entire case. While we give appreciable weight to the findings of the trial court, it nevertheless is our responsibility to review all the evidence and to find the facts for ourselves, independent of the trial court's findings. Spielman v. Weber (N.D.), 118 N.W.2d 727; Johnson v. Tomlinson (N.D.), 160 N.W.2d 49.

The plaintiff's complaint contains two separate causes of action, which are based upon two different promissory notes that were given at different times and in different transactions, and we shall therefore consider them separately.

Before we consider the issues presented by Verry's first cause of action, we deem it necessary to set out briefly what the parties, who were the principal witnesses, claimed the material facts to be.

We find that Verry testified, in substance:

(1) That on August 13, 1965, Murphy came to him and said, "I am right up against it"; that he had to raise fifty thousand dollars which had to be returned to the Educators National Life Insurance Company of Minot (hereinafter called the Minot company); that he had obtained a loan from a Michigan bank for thirty thousand dollars and showed him a check for that amount; and begged Verry to help him out with twenty thousand dollars;

(2) That Verry informed Murphy that he did not have the money and Murphy thereupon suggested that he could borrow it from the First National Bank in Minot;

(3) That Verry agreed to and did obtain a loan in the sum of twenty thousand dollars from the Minot bank, which issued its check in said sum payable to the Minot company (Plaintiff's Exhibit 9);

(4) That Verry issued his personal check to the Minot company for $88.89, to cover the interest due thereon (Plaintiff's Exhibit 12);

(5) That on August 13, 1965, Verry prepared a note for $20,088.89, the amount of money which he claimed he loaned to Murphy; that Murphy signed and delivered said note to him upon his request to do so (Plaintiff's Exhibit 1);

(6) That on August 17, 1965, Verry prepared an assignment of interest (Plaintiff's Exhibit 5), by the terms of which he claims Murphy assigned and transferred to Verry all of his right, title, and interest in 4,444 shares of capital stock of Educators Life Insurance Company of Ann Arbor, Michigan (hereinafter called the Michigan company), to secure the payment of the aforesaid loan which he made to Murphy;

(7) That the note for $20,088.89 became due and payable six months from date, with interest at six per cent;

(8) That on October 22, 1966, Verry submitted a statement to Murphy showing that there was due him on said note $20,088.83 for principal and $1,441.96 for interest (Plaintiff's Exhibit 11); and

(9) That Murphy has refused to pay the principal or interest due on said note, or any part thereof.

Murphy testified to the contrary, in effect:

(1) That he and Verry were directors and officers (president and vice president, respectively) of the Minot company;

(2) That he and Verry were incorporators and directors of the Michigan compa-

ny and participated in its organization and dissolution;

(3) That on January 15, 1965, the board of directors of the Minot company, by resolution, authorized it to invest $50,000 in stock of the Michigan company, as evidenced by its corporate minutes (Defendant's Exhibit "C");

(4) That on June 22, 1965, Murphy, as president, issued a check of the Minot company, payable to himself, in the sum of $50,000 (Plaintiff's Exhibit 18);

(5) That thereafter Murphy invested said sum in the purchase of 11,112.11 shares of the capital stock of the Michigan company;

(6) That on July 29, 1965, after Murphy had made such investment, the State Insurance Commissioner, through his chief examiner, Herbert J. Franek, informed the board of directors of the Minot company that its investment of $50,000 in the stock of the Michigan company was illegal; that said amount would have to be returned to the Minot company; and that said investment would have to be stricken from its records (Plaintiff's Exhibit 13);

(7) That after said demand was made, Verry and Murphy entered into an oral arrangement by the terms of which they agreed, in effect:

(a) To return and restore $50,004 to the Minot company;

(b) That Verry would contribute $20,000, or two-fifths, plus interest, and Murphy would contribute $30,000, or three-fifths of said sum with interest;

(c) That to evidence Verry's contribution of the sum of $20,000 for said purpose, he was to receive two-fifths of 11,112 shares of the capital stock of the Michigan company, or 4,444 shares, and Murphy was to retain the remainder, or 6,668 shares;

(8) That on August 13, 1965, pursuant to said agreement, Verry obtained a loan from the First National Bank of Minot for $20,000, the bank making its check payable in said sum to the Minot company (Plaintiff's Exhibit 9), and Verry gave his personal check payable to the Minot company, on the same day, for interest in the sum of $88.89 (Plaintiff's Exhibit 12), while Murphy obtained a loan from the Manufacturers National Bank of Michigan for $30,000 and gave his own check for $4.00, making a total of $30,004, and issued his personal check for $133.35 to cover the interest due on his contribution thereon (Defendant's Exhibit "E");

(9) That on August 17, 1965, Verry came to Murphy and said that he would like to have some evidence that he had put up this money because the stock was all in Murphy's name; that Verry didn't have anything to show what he had paid for it and that he had to have some legal paper that would be in his estate in case something happened to him, as he was an older man; and that Verry promised that he "would never seek to corrupt this document or bring it into court";

(10) That Murphy responded that it was entirely agreeable to him that Verry should have the evidence he wanted, to show the amount he had invested in the stock of the Michigan company and the number of shares he was entitled to receive therefor;

(11) That Murphy thereupon did sign the assignment (Plaintiff's Exhibit 5) and delivered it to Verry at his request to do so;

(12) That four or five days later, Verry presented a note to Murphy (Plaintiff's Exhibit 1) which Verry had prepared; that Murphy read it, understood its contents, and signed and delivered it to Verry, in good faith, to guarantee that Verry would receive 4,444 shares of stock in the Michigan company, which he had purchased for $20,000;

(13) That the organization of the Michigan company never was completed; that on March 29, 1966, the directors of the

Michigan company exchanged their stock for stock in the Wayne National Insurance Company of Detroit, at a big loss; and, finally,

(14) That Verry did not demand the payment of the $20,000, plus interest, due on the note (Plaintiff's Exhibit 1) until October 22, 1966, which was eight months after it was due, after the Michigan company was dissolved at a big loss, and after Verry was removed as a paid officer from the Minot company.

An analysis of these conflicting claims shows that, under Verry's version, Exhibit No. 1 is a standard form of promissory note, containing a clear and unconditional promise to pay a fixed sum of money at a definite time with interest at six per cent, and Exhibit No. 5 is an assignment of the right, title, and interest in 4,444 shares of the corporate stock of the Michigan company, which were owned by Murphy, to secure the payment of the amount due on said note with interest; while, under Murphy's version, the note was given to show the amount of money which Verry had invested in the purchase of stock in the Michigan company, and the assignment was given to establish the number of shares which Verry was entitled to receive therefor.

There not only is a serious conflict between the testimony of the parties with respect to the operative facts but also with respect to the legal consequences arising therefrom. Under Verry's version, the note created a debt, the payment of which was to be secured by a pledge of corporate stock covered by the assignment; while under Murphy's version, the note and assignment did not create a debt but merely constituted an executory contract for the purchase of stock to be delivered to Verry after its issuance and delivery to Murphy by the Michigan company.

Manifestly, these two versions, with respect to both the material facts in issue and the legal consequences arising therefrom, are so conflicting, inconsistent, and contradictory that they cannot be reconciled or harmonized. Either one or the other is false and untrue.

Counsel for Verry contends strenuously, however, that the evidence upon which Murphy's version is based was incompetent and inadmissible, under the parol-evidence rule, to prove that said note was obtained by the practice of fraud or that the consideration for said note had failed; that he made proper and timely objection to the reception of such evidence and had a standing objection to the admissibility thereof.

This contention apparently is based:

(1) Upon our statutes, which provide:

(a) "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Sec. 9–06–07, N.D.C.C.

(b) "A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise. An oral agreement is executed within the meaning of this section whenever the party performing has incurred a detriment which he was not obligated by the original contract to incur." Sec. 9–09–06, N.D.C.C.

(2) Upon our decisions, in which we have consistently held, in effect, that where a written contract is complete in itself, and is unambiguous and contains mutual contractual covenants agreed upon such parts cannot be changed by parol testimony, or any terms added thereto, in the absence of a clear showing of fraud, mistake, or accident. Larson v. Wood, 75 N.D. 9, 25 N.W.2d 100; Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606; Mevorah v. Goodman, 79 N.D. 443, 57 N.W.2d 600, 49 A.L.R.2d 825.

We have considered our decisions construing these statutes and cannot agree with counsel for respondent that the evidence adduced by Murphy should have been excluded under the parol-evidence rule. On the contrary, we are firmly convinced that the parol-evidence rule does not apply to the immediate parties to a promissory note where, as here, the maker has alleged fraud and failure of consideration as a defense to its validity.

We conclude, therefore, that the evidence offered by Murphy, to prove that the execution and delivery of the note was procured by fraud and that the consideration of the note had failed, was competent and admissible under well-recognized exceptions to the parol-evidence rule. Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606; Ives v. Hanson (N.D.), 66 N.W.2d 802; Zimmer v. Bellon (N.D.), 153 N.W.2d 757; Hartford Accident and Indemnity Co. v. Anderson (N.D.), 155 N.W.2d 728.

This brings us to the defense of failure of consideration.

The principles of law which apply to this defense are well settled in this State. They are:

(1) Failure of consideration is an affirmative defense. Rule 8(c), N.D.R.Civ. P.

(2) That every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value. Sec. 41–03–01, N.D.C.C. [prior to effective date of Uniform Commercial Code].

(3) That it is a general rule that, as between the immediate parties to a note, a sufficient and adequate consideration is essential to the existence of a valid and binding promissory note. 11 Am.Jur.2d Bills and Notes, Sec. 237, at p. 264; 10 C. J.S. Bills and Notes § 143, at p. 599.

This general rule has been recognized in this State. Section 41–03–05, N.D.C.C., provided, prior to the effective date of the Uniform Commercial Code:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course; * * *"

Construing this section, we have held:

(1) "As between the immediate parties to a negotiable instrument, absence of consideration therefor is a defense, and may be established by parol." Farmers & Merchants State Bank of Tolna v. Stavn, 49 N.D. 993, 194 N.W. 689; First State Bank of Eckman v. Kelly, 30 N.D. 84, 152 N.W. 125.

(2) "In an action on a negotiable promissory note, where the maker alleges want of consideration, the burden is on him to prove that defense by a preponderance of the evidence on that issue." First State Bank of Hazen, N. D. v. Radke, 51 N.D. 246, 199 N.W. 930, 35 A.L.R. 1355; Goldammer-Cranna-Weaver Co. v. Price, 60 N.D. 272, 234 N.W. 63. See also Sec. 9–05–11, N.D.C.C.

We conclude and determine, therefore, that, between the immediate parties to a promissory note:

(1) Failure of consideration is a good and valid defense to the payment thereof; and

(2) That parol evidence is competent and admissible to prove that the consideration of the note in issue had failed.

We now reach the crucial issue in this case—whether the promissory note involved in Verry's first cause of action was obtained by the practice of fraud and deceit.

Fraud is an affirmative defense. Rule 8(c), N.D.R.Civ.P.

The facts constituting fraud must be stated with particularity. Rule 9(b), N.D. R.Civ.P.

We have examined Murphy's answer, which pleads fraud as a defense to the validity of said note, and find that although it is not an example of excellence in pleading, it does state facts sufficient to apprise Verry of the nature of said defense.

Our statutes define the term "actual fraud" and, insofar as is pertinent here, provide:

(1) "Actual fraud * * * consists in any of the following acts committed by a party to the contract, * * * with intent to deceive another party thereto or to induce him to enter into the contract:

"1. The suggestion as a fact of that which is not true, by one who does not believe it to be true;

"2. * * *

"3. The suppression of that which is true by one having knowledge or belief of the fact;

"4. A promise made without any intention of performing it; or

"5. Any other act fitted to deceive." [Sec. 9–03–08, N.D.C.C.]

(2) "When through fraud, mistake, or accident a written contract fails to express the real intention of the parties, such intention is to be regarded and the erroneous parts of the writing disregarded." [Sec. 9–07–05, N.D.C.C.]

(3) "Actual fraud is always a question of fact." [Sec. 9–03–10, N.D.C.C.]

Construing these statutes, insofar as they relate to the defense of fraud in actions brought on promissory notes, we have held, in effect:

(1) That fraud vitiates and destroys everything into which it enters. The law requires good faith in business transactions and will not allow one party to willfully mislead or deceive another. Stevens v. Barnes, 43 N.D. 483, 175 N.W. 709, 18 A.L.R. 10; 37 Am.Jur.2d Fraud and Deceit, Sec. 3, p. 28.

(2) That fraud never is presumed. The presumption is that transactions between private parties are fair and reasonable. City of Granville v. Kovash, Inc. (N.D.), 118 N.W.2d 354; Sobolik v. Vavrowsky (N.D.), 146 N.W.2d 761. See also Alho v. Sterling, 266 Minn. 71, 122 N.W.2d 869.

(3) That there can be no fraud without an intent to deceive. Zimmerman v. Kitzan (N.D.), 65 N.W.2d 462; City of Granville v. Kovash, Inc., supra.

(4) That fraud (to support a legal action or defense) must have produced an injury. Federal Land Bank of St. Paul v. Koslofsky, 67 N.D. 322, 271 N.W. 907.

(5) The suppression of that which is true, by one having knowledge of the fact and who is a party to a contract, with intent to deceive another party thereto or to induce him to enter into a contract, constitutes actual fraud. Adams v. Little Missouri Minerals Association (N.D.), 143 N. W.2d 659.

(6) That the fact of the inducement and reliance may be inferred from the facts and attending circumstances of the transaction. Adams v. Little Missouri Minerals Association, supra.

(7) That fraud must be proved by evidence that is clear, satisfactory, and convincing. Hoffer v. Crawford (N.D.), 65 N.W.2d 625; Engen v. Kincannon (N. D.), 79 N.W.2d 160; City of Granville v. Kovash, Inc., supra.

Counsel for Verry contends very persuasively, however, that the principles of law relating to the defense of fraud which we have set out herein cannot be invoked or applied in this case for the conclusive reason that Verry was entitled to the judg-

ment he recovered under the undisputed facts established by Murphy's solemn admissions and the law applicable thereto.

Counsel argues that the record shows without dispute that Murphy is an intelligent man with considerable experience in business transactions; that he admitted under oath:

(1) That he knew that Exhibit No. 1 was a promissory note;

(2) That he read it and understood its contents before he signed it;

(3) That he signed it freely and voluntarily;

(4) That the note was past due;

(5) That Verry demanded payment of it; and

(6) That Murphy refused to pay the same or any part thereof.

Counsel insists that Murphy's testimony must be weighed and evaluated in the light of his knowledge and business experience; that he is bound by his admissions under oath and therefore he is estopped from claiming that the note in issue was procured by the practice of fraud and deceit, because his claim is without any basis in fact or truth. He cites and relies on Hanes v. Mitchell, supra, 49 N.W.2d at page 610, in which this court said (quoting 12 Am.Jur. Contracts, Sec. 137, at p. 629):

"It is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence were admissible."

Counsel claims that this language is applicable to and decisive of the issue of fraud; that Murphy's admissions sustain the trial court's findings of fact; and that the rule established in *Hanes* requires that the judgment which Verry obtained must be affirmed.

We agree with counsel for Verry that, in the absence of satisfactory and convincing evidence that Murphy was misled and deceived by the practice of fraud and deceit upon him, then Murphy should be bound by his admissions under oath. On the other hand, if there is satisfactory and convincing evidence in the record that Murphy was misled and deceived and was induced to execute and deliver the note through fraud, then the fraud vitiates the transaction and destroys the validity of the note.

We therefore are firmly convinced that where, as in this case, the maker of a promissory note has alleged fraud as a defense to the validity of a note, it is the imperative duty of the court to make findings of the material facts to determine whether the defense of fraud, when considered in the light of the law established by our statutes and decisions, has or has not been sustained.

It is in the performance of this duty that we consider the defense of fraud upon its merits.

The primary question arises, therefore, whether Murphy has proved all of the essential elements to sustain such defense.

Stated precisely, did Murphy prove:

(1) That Verry made a statement as a fact, which he knew was false and untrue, or that he committed any other act which constitutes actual fraud as the same is defined in our statute set out herein;

(2) That Verry made such false statement or committed any other act constitut-

ing actual fraud with the intent to mislead and deceive Murphy;

(3) That Murphy in good faith believed and also relied and acted upon such false and untrue statements or other act constituting actual fraud; and

(4) That Murphy, in so believing, relying, and acting, was injured or damaged thereby to his substantial prejudice? Coman v. Williams (N.D.), 65 N.W.2d 377; Zimmerman v. Kitzan, supra; Adams v. Little Missouri Minerals Association, supra; Federal Land Bank of St. Paul v. Koslofsky, supra.

Manifestly, before we can answer these questions, we must decide whom we believe or disbelieve; whose version of the facts, where a sharp conflict exists in the evidence, is true or false. We must decide which version of the facts is more reasonable, probable, and consistent with common experience, in the light of all the facts and circumstances in evidence. We must pass upon the issue of truth and veracity, independent of the trial court's findings of fact.

We have examined the entire record to decide where the truth lies, and have found and determined therefrom that Verry failed to deny Murphy's testimony to the effect:

(1) That Verry said he would like to have some evidence that he had paid up this money;

(2) That Verry said all the stock was in Murphy's name and that Verry did not have anything to show that he paid up a part of it;

(3) That Verry said that since he was an older man, he had to have some legal paper for his estate in case something happened to him, as evidence of the money he had put up for the stock;

(4) That Verry said he would never corrupt the instrument or bring it into court;

(5) That Verry said to Arthur E. Johnson, while discussing the insurance examin-

er's requirement that the $50,000 be returned to the Minot company, that it appeared to be "up to Mr. Murphy and myself to raise this money."

The record shows that Verry was called as a witness in rebuttal. Obviously, Verry knew whether he made the statements attributed to him. He had an opportunity to deny them if he did not make them, or to explain them if he had. This he did not do. His failure to deny them, therefore, warrants the inference that Murphy's version of the facts is true and correct.

This conclusion is based upon the rule we recognized in Scherbenske v. Maier (N.D.), 71 N.W.2d 770, where we said (quoting Jones on Evidence, 2d Ed., Vol. 1, Sec. 92, pp. 156–157):

"Where evidence has been introduced affording legitimate inferences going to establish the ultimate fact that the evidence is designed to prove, and the party to be affected by the proof, with an opportunity to do so, fails to deny or explain such facts, they may well be taken as admitted with all the effect afforded by the inferences."

Verry's claim that the resolution (Defendant's Exhibit "C"), adopted by the board of directors of the Minot company on January 15, 1965, which bears his signature, authorizing the investment of $50,000 in the Michigan company, was a forgery, was not corroborated by any other credible evidence.

The plaintiff called Ignatius Wolfe, Charles L. Hawley, and John P. Neary, directors of the Minot company, for the apparent purpose of supporting his claim that the resolution referred to herein was a forgery. The first two witnesses, however, could not remember the substance of the resolution so adopted, but Neary testified that the board of directors did approve said resolution, as claimed by Murphy.

The trial court found, and stated for the record, that Murphy's Exhibit "C" was the original resolution that was adopted at the time in issue. We agree with this finding of fact by the trial court.

Verry's testimony is absolutely contradictory in matters material on the issue of truth and veracity. He testified, in substance:

(1) On direct examination, that he prepared the assignment of interest (Plaintiff's Exhibit 5), but on rebuttal he changed his testimony and claimed that Murphy prepared it; and

(2) That Murphy's claim that he entered into an agreement with him, whereby he was to contribute $20,000, or two-fifths, to return the $50,000 to the Minot company and to receive 4,444 shares of the stock in the Michigan company, was a falsehood. But, when he was asked to explain why he paid interest on $20,000 in the sum of $88.-89, as shown by his check, he answered that he had an agreement with Murphy that the Minot company was entitled to interest. This constitutes an admission by Verry that he had some kind of an agreement with Murphy and contradicts his contention that Murphy's claim that they had such an agreement was a falsehood.

Although Verry admitted that the examiner of the State Insurance Commissioner informed him that Murphy had withdrawn $50,000 from the Minot company by check, he solemnly denied that he knew, even at the time of trial, what Murphy did with the money. But the minutes of the Minot company of July 29, 1965, show that the examiner required the removal from its records of the $50,000 invested by Murphy in the newly organized company in Michigan, and the endorsement which Verry made upon the back of his Exhibit 1, the reason for which he could not recall, reads: "This note given in connection with and part of assignment of interest in stock of Educators Life Insurance Co., Ann Arbor, Michigan."

These records prove, beyond controversy, that Verry knew that Murphy had invested the $50,000 in stock in the Michigan company, and that his denial of such knowledge under oath was false and untrue. These contradictions are serious in nature and tend to discredit and impeach Verry for truth and veracity.

Further, Verry's testimony is inconsistent with the facts established by the documentary evidence, for the reasons:

(1) That the sum of $20,000 which Verry claimed he loaned to Murphy was not paid to him but to the Minot company; and

(2) That Verry gave his check to the Minot company for $88.89 as interest.

Certain it is that if Verry did not agree to assume a debt to the Minot company in the sum of $20,000, he owed no interest thereon.

Contrary to Verry's testimony, the record also shows:

(1) That Murphy purchased 11,112.11 shares of stock in the Michigan company with the $50,000. Two-fifths of this number of shares equals about 4,444 shares, and, at $4.50 a share, amounted to approximately $20,000, the sum which Murphy claimed Verry had agreed to pay for said stock; and

(2) That the assignment (Plaintiff's Exhibit 5) was not, in fact, a pledge of 4,444 shares of stock in the Michigan company but the transfer of an interest in and title to such stock, because both the assignment and the endorsement on the note (Plaintiff's Exhibit 1) refer to an interest and not a lien, evidencing ownership, as distinguished from a pledge of such stock.

Finally, counsel for Murphy argues, in effect, that Verry's admission that he did not demand payment of said note until after the Michigan company was dissolved, on August 4, 1966, at a big loss, and until after he was removed as a paid officer from

the Minot company, proves that Verry resented his removal and that he was actuated by malice and ill will in bringing this action.

■ It is a well-recognized rule of evidence and sound principle that a party cannot claim the benefit of a version of relevant facts more favorable to him than he has made for himself by his own testimony. 169 A.L.R. 798.

This rule was expressed by the Supreme Court of South Dakota in Miller v. Stevens, 63 S.D. 10, 256 N.W. 152 [quoting Western & A. R. Co. v. Evans (1895), 96 Ga. 481, 23 S.E. 494, 495]:

"Every witness is under a solemn obligation to tell * * * the whole truth, * * * and this obligation is especially binding upon one who seeks, by his own testimony, to establish a substantial right against another. * * * It surely can never be unfair to a party laboring under no mental infirmity to deal with his case from the standpoint of his own testimony as a witness."

Considering our comparative statement of the conflicting versions of relevant facts in the light of reason, common experience, and approved rules of evidence, we find and determine:

(1) That Verry's version of the material facts, in which there is a serious conflict with Murphy's testimony, is so unreasonable, improbable, inconsistent, and contradictory that it is unworthy of credence and belief; and

(2) That Murphy's version of relevant facts, on the contrary, is more positive, reasonable, probable, and consistent with the documentary evidence and the conduct of the parties, and it is amply corroborated by other credible evidence.

Since we have found that Murphy's version of the relevant facts is true, we now proceed to test the sufficiency of the evidence to establish all of the elements essential to the defense of fraud, and in so doing we find that the material facts show:

(1) That Verry's statements:

(a) That he wanted the note to show the amount of money he had invested or paid for the stock; and

(b) That since he was an older man, he wanted to have something in writing for his estate if something should happen to him;

were false and untrue;

(2) That Verry suppressed his true intention, that he wanted the note as evidence of debt;

(3) That Verry made these statements and suppressed the truth with the intent to mislead and deceive Murphy;

(4) That Verry's subsequent conduct proves that he did not intend to fulfil! his promise not to bring the note into court;

(5) That although Murphy did not testify directly that he believed and relied and acted upon Verry's assurances in giving him the note, such inducement and reliance may be inferred from acts and conduct, and we find that Murphy did rely and act upon the promises and assurances that Verry gave to him; and

(6) That Murphy was deceived and injured thereby, to his substantial prejudice.

The record shows, without substantial dispute, that the parties were friends and business associates, that a relation of trust and confidence existed between them at the time this transaction took place; that although Verry sought the note to evidence a debt, he assured Murphy that he wanted the note in question for only two reasons: (1) so that he would have something to show the amount he agreed to pay for the stock, and (2) so that he would have something in writing for his estate, in the event he preceded Murphy in death; that Verry made these statements with the intent to

suppress the truth and to lull Murphy into a false state of security by promising him that he never would bring the note into court, a promise which he did not intend to keep and did not keep. Murphy believed and trusted Verry and was deceived and induced thereby to give Verry the note in question.

The suppression by Verry of his true intention to use said note as evidence of debt constitutes actual fraud. Adams v. Little Missouri Minerals Association, supra.

The suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation. Tyler v. Savage, 143 U.S. 79, 98, 12 S.Ct. 340, 36 L.Ed. 82.

In a court of conscience, deliberate concealment is equivalent to deliberate falsehood. Cosby v. Buchanan, 23 Wall. 420, 23 L.Ed. 138.

We are compelled to conclude, therefore, that Murphy has established his defense of the practice of fraud and deceit by evidence that is clear, satisfactory, and convincing.

The trial court based its decision upon the rule announced in Hanes v. Mitchell, supra. We find, however, that Mitchell's defense in that case was that he signed the contract without reading it, under a mistake of fact as to its contents and under mistake of law as to its significance. He did not plead or prove fraud as a defense to the validity of the contract there in issue, as is true in this case.

The operative facts in *Hanes* and those we have found herein are materially different, and bring this case within the exception of the rule expressed therein. Consequently, it follows that the trial court erred in concluding that our decision in *Hanes* was applicable to and decisive of Verry's right to the recovery of judgment in his favor.

Where fraud has been alleged and proved as a defense to the validity of a promissory note, we have held, in effect:

(1) Where the note has been obtained by fraud, the fraud tainted the whole instrument and destroyed it entirely. Knowlton v. Schultz, 6 N.D. 417, 71 N.W. 550.

(2) Where a promise is made by the payee of a note, in reference to the consideration for the giving of the same, which he does not intend to fulfill, such promise constitutes a fraud that will defeat the note except in the hands of an innocent holder. Walters v. Rock, 18 N.D. 45, 115 N.W. 511.

(3) Where a promissory note is procured by false and fraudulent representations, it has no validity, and the maker incurs no liability thereon. Marlatt v. Couture, 41 N.D. 127, 169 N.W. 582.

(4) Where a promissory note is procured by fraud and misrepresentation and there is no legal execution or delivery of it, it is of no legal force or effect. Stevens v. Barnes, supra; Carufel v. Kounts, 60 N.D. 91, 232 N.W. 609.

We adhere to these principles of law, and have reached the deliberate conclusion that since the note in question was obtained by fraud, the fraud tainted and destroyed it and hence the note did not create a binding and enforceable obligation but was null and void and of no legal force and effect from its inception, and therefore the judgment entered thereon is a nullity.

It will be the order of this court, therefore, that the judgment which Verry has recovered against Murphy, upon his first cause of action, in the sum of $20,000 with interest and statutory costs, shall be and the same is hereby reversed, vacated, and set aside, without prejudice to Verry's right to pursue any appropriate remedy he may have for the protection and enforce-

ment of his legal rights under his contract for the purchase of said stock.

This brings us to the merits of Verry's second cause of action, which is based upon a promissory note dated May 17, 1966, in the sum of $10,000 and bearing interest at six per cent (Plaintiff's Exhibit 2).

The record shows, without dispute, that Verry claims and that Murphy admits:

(1) That on May 17, 1966, Murphy applied for and obtained a personal loan from Verry in the sum of $10,000;

(2) That on the same day and as part of the same transaction, Murphy executed and delivered the note here in issue to evidence the debt created by said loan;

(3) That Murphy assigned and delivered two certificates of stock in the Minot company to secure the payment thereof (Plaintiff's Exhibits 3 and 4);

(4) That Murphy received Verry's check in the sum of $10,000 (Plaintiff's Exhibit 7);

(5) That Murphy endorsed the check and cashed it and received the proceeds thereof;

(6) That the said note was due in ninety days, or on August 17, 1966; and

(7) That Verry demanded payment of said note, and that Murphy has refused to pay the same or any part thereof.

The only defense which Murphy has pled to nonpayment of said note is that Verry extended the time for payment thereof for a period of two years from the time it became due, and that therefore the note was not due and payable when this action was commenced.

■ Under our law, in the absence of fraud, mistake, or accident—and none has been here claimed or proved—a written contract may be altered only by a contract in writing or by an executed oral agree-

ment, and not otherwise. Sec. 9-09-06, N. D.C C.

■ We have held that the time of payment contained in a promissory note may not be extended by an oral agreement, when the oral promise to extend payment is based entirely upon the debtor's oral promise to pay the consideration for the extension at some future time. Foster v. Furlong, 8 N.D. 282, 78 N.W. 986; Farmers State Bank of Lisbon v. Fausett, 54 N. D. 696, 210 N.W. 638, 48 A.L.R. 1219.

■ We find and determine that Murphy has failed to establish:

(1) That Verry consented to an extension of time for the payment of said note;

(2) That the oral agreement to extend the time of payment as based on a valuable consideration; and

(3) That said oral agreement was fully executed. Consequently his defense, attempting to excuse the nonpayment of said note, is devoid of merit.

We are firmly convinced, therefore, that Murphy has failed to sustain the burden of proof on his defense to the nonpayment of said note. The judgment of the district court in favor of Verry on his second cause of action, in the sum of $10,000 with interest and statutory costs, is sustained by ample evidence and elementary principles of law, and therefore said judgment must be and the same is hereby affirmed.

The case is remanded to the district court with directions to enter judgment in conformity with this decision.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.

PAULSON, J., deeming himself disqualified, did not participate; Honorable C. F. KELSCH, one of the District Judges of the Sixth Judicial District, sitting in his stead.